210 A.2d 50.

STATE *vs.* MANUEL MENDES.

MAY 10, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

PAOLINO, J. This is an indictment charging the defendant with driving so as to endanger, death resulting, in violation of G. L. 1956, §31-27-1. It was tried before a justice of the superior court sitting with a jury and resulted in a verdict of guilty. The case is here on the defendant's bill of exceptions to the denial of his motion for a new trial and to certain rulings during the trial. Additionally, the parties have briefed and argued certain constitutional questions which were not raised in the superior court, namely, the effect of our recent decision in *State* v. *Dufour,* 99 R. I. 120, 206 A.2d 82, on the admissibility of the defendant's incriminating statement. We hold that *Dufour* applies here.

The instant case was tried in the superior court in May 1963. *Escobedo* v. *State of Illinois,* 378 U. S. 478, 84 S. Ct.

1758, was decided on June 22, 1964. *People* v. *Dorado,* 40 Cal. Rptr. 264, 394 P.2d 952, was decided on August 31, 1964. A rehearing was granted in *Dorado* and the decision therein was filed on January 29, 1965. See *People* v. *Dorado,* 42 Cal. Rptr. 169, 398 P.2d 361. The decision in *State* v. *Dufour, supra,* filed January 8, 1965, contains the following holdings:

"In *Escobedo* the defendant requested the assistance of counsel and was refused. In this respect that case differs from the case at bar but in the course of its opinion the supreme court made it clear, we think, that the defendant in such circumstances must not only have been advised of his right to assistance of counsel when requested but he must also have been warned of his right to remain silent. 'We hold, therefore,' the court said, 'that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied "the Assistance of Counsel" in violation of the Sixth Amendment to the Constitution as "made obligatory upon the States by the Fourteenth Amendment," *Gideon* v. *Wainwright,* 372 U.S. [335], at 342, 83 S. Ct. [792], at 795 [9 L.Ed.2d 799] and that no statement elicited by the police during the interrogation may be used against him at a criminal trial.'

"Our view of the thrust of *Escobedo* has recently been applied by the California supreme court in *People* v. *Dorado,* 40 Cal. Rptr. 264, 394 P.2d 952. In that case as in our case the defendant failed to request counsel but the court was of the opinion that this did not distinguish the case from *Escobedo* saying: 'We find no strength in an artificial requirement that a defendant must specifically request counsel; the test

must be a substantive one: Whether or not the point of necessary protection for guidance of counsel has been reached.'

"In *Escobedo* the point of such necessary protection was reached in the opinion of the supreme court when the investigation began to focus on a particular suspect then in police custody. This was unquestionably the situation of defendant in the case at bar. For this reason his confession was inadmissible and should have been suppressed."

The state contends that the case at bar is not governed by *Dufour* because the cases are materially different factually. It points out that in *Dufour* the confession was held invalid in connection with the defendant's motion to suppress the evidence, whereas in this case no objection was made by defense counsel to the voluntariness and introduction of defendant's statement. The state further contends that since defendant made no issue of the manner of circumstances in which defendant's statement was obtained, there was a waiver by counsel of any irregularities which existed when the statement was obtained by the police. Finally, the state argues that in any event the introduction of defendant's statement, if error, constituted harmless error because of other overwhelming evidence in the record pointing to defendant's guilt.

On the contrary defendant argues that *Escobedo,* as applied by the holding in *Dufour,* is applicable in this case. He contends that the failure of the police to advise him of his rights to remain silent and to have assistance of counsel at the time when the investigation became accusatory violated basic constitutional rights of due process and that his statement was not admissible, even though not objected to by his counsel.

In the posture in which this case is now presented, it is apparent that it must be decided in the light of events which occurred after the fatal accident and after defendant's arrest. For this reason the details of the accident need

be summarzied only briefly. We shall refer chiefly to evidence surrounding defendant's statement to the police.

Shortly before 10 p.m. on August 18, 1962 defendant was operating his automobile in a northerly direction on Pawtucket avenue in the city of East Providence. At approximately the same time and place Suzanne M. Magsamen was operating a motor vehicle in a southerly direction along the same highway. The vehicles collided with each other causing fatal injuries to Suzanne M. Magsamen. She was pronounced dead upon arrival at the hospital immediately after the accident.

When the police arrived at the scene of the accident, defendant was still behind the steering wheel of his car. Upon observing that he had been drinking, he was taken by the police to the East Providence police station. Shortly after his arrival there he was examined by a police surgeon and pronounced under the influence of intoxicating liquor. He was informed of his right under §31-27-3 to be examined by a physician of his own choice. See *State* v. *Lefebvre,* 78 R. I. 259. He was also given the opportunity to use the telephone. It appears from the evidence that because of his condition no further questioning took place that night. He was kept in custody at the police station all night.

On the following morning, August 19, 1962, after being told that the operator of the other auto had died, defendant was interrogated by members of the East Providence police department about the accident. The questions and his answers, which contained incriminating matter, were reduced to a statement in writing and signed by him in the presence of three police officers who signed as witnesses. He was charged with two separate offenses, driving under the influence of intoxicating liquor in violation of §31-27-2, and driving so as to endanger, death resulting, in violation of §31-27-1. He was subsequently indicted for the latter violation.

This case involves only the indictment. The §31-27-2 violation was pending in the superior court at the time of the trial. The defendant did not testify in his own behalf and he presented no witnesses. Although there were no eyewitnesses the state presented an engineering sketch of the area and also numerous photographs taken at the scene of the accident showing the highway and the position of the cars after the accident. In substance the state's evidence indicated that defendant's car had been seen operating in an erratic manner just prior to the accident; that the weather was clear and the highway was well illuminated; and that the actual impact occurred on the westerly side of the road, thus showing that defendant had driven onto the path of decedent's car on her side of the highway.

The statement was introduced in evidence in the superior court without objection. Indeed, defendant's counsel expressly stated in open court that he had no objection to its introduction. No claim was made then, and none is made now, that any coercion, intimidation, threats, or promises of any kind were made by the police to elicit the statement from defendant. The voluntariness of it has never been put in issue, either in the superior court or here. The uncontradicted evidence by the police is that before signing it defendant read it and in fact made corrections which appear thereon.

Notwithstanding the totality of circumstances showing absence of involuntariness, coercion, threats, promises, or intimidation, the question remains, did the failure of the police to advise defendant of his constitutional rights to remain silent and to assistance of counsel vitiate the statement and render it inadmissible?

We summarize the essential facts. There is no evidence indicating that defendant sought or was denied counsel; nor is there any evidence or claim that he was advised of his basic rights to remain silent and to have the assistance of counsel when the general inquiry in this matter focused on

him in an accusatory investigation while in custody of the police. With respect to the offense charged in this indictment, "the point of necessary protection for guidance of counsel" occurred when defendant learned of the death of the driver of the other car. On the morning of the interrogation in the police station, defendant had become the accused with respect to the §31-27-1 charge, and the purpose of the interrogation was to elicit incriminating information from him about the fatal accident.

We are now faced squarely with the question whether the doctrine of *Escobedo* should be applied, as was done in *People* v. *Dorado*, 40 Cal. Rptr. 264, 394 P.2d 952, and in the holding in *State* v. *Dufour, supra,* or whether it should be limited to its own facts and circumstances as was done in *Mefford* v. *State*, 235 Md. 497, 201 A.2d 824, and *State* v. *Scanlon*, 84 N. J. Super. 427, 202 A.2d 448.

We have carefully researched this problem and read with care the conflicting views of respectable authorities. From such research only one conclusion is certain, namely, that the search for truth and justice is the ultimate goal, because all recognize that when the rights of some are violated, the rights of all are endangered. In our judgment our holding and reasoning in *Dufour* will in the long run better serve the attainment of truth and the administration of justice in accordance with basic rights guaranteed under our federal and state constitutions. In *Carnley* v. *Cochran*, 369 U. S. 506. 513, 82 S. Ct. 884, 889, the Supreme Court specifically ruled:

"* * * it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request. In *McNeal* v. *Culver*, [365 U. S. 109, 5 L.Ed.2d 445, 81 S. Ct. 413] *supra,* the petitioner's allegation that he had requested counsel was countered by a denial in the return that 'petitioner's constitutional rights were violated by the court's alleged refusal to appoint counsel in his behalf,' and the State Supreme Court noted that the record was

silent as to any request. We held that when the Constitution grants protection against criminal proceedings without the assistance of counsel, counsel must be furnished 'whether or not the accused requested the appointment of counsel. *Uveges* v. [Commonwealth] *Pennsylvania*, 335 U. S. 437, 441 [69 S. Ct. 184, 185, 93 L.Ed. 127].' "

We hold that defendant had a constitutional right to be advised of his right to remain silent and of his right to assistance of counsel; that the failure of the police so to advise him violated his right to due process; and that the incriminating statement elicited by the police during the interrogation may not be used against him in a criminal trial unless there has been a valid waiver of his rights by defendant.

We inquire next whether defendant waived his constitutional rights in this case. In *Johnson* v. *Zerbst*, 304 U. S. 458, 464, waiver has been defined as "an intentional relinquishment or abandonment of a known right or privilege." In *Moore* v. *State of Michigan*, 355 U. S. 155, 161, the issue was whether there had been a valid waiver of the petitioner's right to counsel. The court there held that the petitioner had the burden of showing by a fair preponderance of the evidence that he did not intelligently and understandingly waive his right to counsel. And in *Cole* v. *Langlois*, 99 R. I. 138, 206 A.2d 216 at page 219, the court said this rule relative to burden of proof "has application to any situation in which the question is whether there has been an intelligent, voluntary waiver of some constitutional right."

In this case we do not reach the question of proving waiver. There is no evidence here, direct or otherwise, that defendant had knowledge of his rights to remain silent and to have the assistance of counsel. From a careful reading of the transcript it does not appear that defendant was aware of such constitutional rights nor advised of them by the police and in such circumstances a waiver cannot be

614

shown. Indeed, the state makes no claim to the contrary in its brief or oral argument. See *People* v. *Dorado*, 42 Cal. Rptr. 169, 398 P.2d 361, 370, 371. As the court said in *Moore* v. *State of Michigan, supra,* at page 161: "Where the right to counsel is of such critical importance as to be an element of Due Process under the Fourteenth Amendment, a finding of waiver is not lightly to be made. Cf. *Johnson* v. *Zerbst*, 304 U. S. 458, 464; *Glasser* v. *United States,* 315 U. S. 60, 70; *Von Moltke* v. *Gillies,* 332 U. S. 708, 723." We hold that there was no valid waiver.

There is no merit in the state's contention that there was a valid waiver by his counsel's express statement that he had no objection to its admission. There is nothing in the record indicating that defendant participated in his counsel's decision in this matter. Absent such participation, defendant's constitutional rights cannot be waived. See *Fay* v. *Noia,* 372 U. S. 391; see also *Cole* v. *Langlois, supra.*

The state further contends that the introduction of defendant's statement, if error, constituted harmless error in view of other overwhelming evidence pointing to defendant's guilt. This, however, completely ignores the well-established principle that the admission of an invalid incriminating statement is never harmless error. See *Lynumn* v. *State of Illinois,* 372 U. S. 528. A reading of the transcript supports the state's claim that there is evidence from which a jury could find defendant guilty apart from the tainted statement. But in the absence of special findings by the jury, there is no way of knowing precisely on what evidence the conviction is based. Nothing can cure the unlawful results flowing from the failure of the police to advise defendant of his constitutional rights to remain silent and to assistance of counsel. See *State* v. *Dufour, supra.*

This case was brought here by defendant's bill of exceptions. In this court the parties raised certain jurisdictional questions which, because of their nature, we allowed them

to brief and argue even though they were not raised in the superior court and were not part of the record brought here by the bill of exceptions. Because defendant's contentions have merit, we do not believe we should compel him to seek post-conviction relief, as he may under *Fay* v. *Noia*, *supra*. See concurring opinion of Mr. Justice Joslin in *State* v. *Dufour*, 99 R. I. 120, 206 A.2d 82, 88. The defendant has been denied due process and the conviction cannot stand. See *State* v. *Kilday*, 99 R. I. 209, 206 A.2d 537.

Nor is the case at bar similar to *In Re Lopez*, Cal., 42 Cal. Rptr. 188, 398 P.2d 380. wherein the court said at page 383: "* * * nor may *Escobedo* or *Dorado* be applied to cases which have become final prior to the date that the United States Supreme Court rendered the *Escobedo* decision." The case at bar, unlike the situation in *In Re Lopez*, is not final.

There is one very material difference factually between *Dufour* and the case at bar. In *Dufour*, once the unlawful confession and the tainted evidence were suppressed, there was no other evidence to support a conviction. For this reason we remitted the case to the superior court with directions to quash the indictment and discharge the defendant. But in the case at bar there is other evidence which, if believed, would support a conviction. In such circumstances there must be a new trial.

The verdict of guilty is quashed, and the case is remitted to the superior court for a new trial in accordance with this opinion.

JOSLIN, J., dissenting. This case came to the court on the defendant's exceptions to the denials of his motions for a mistrial and a new trial. When the case was argued the state, not the defense, raised the question of whether it was error for the trial court to have admitted into evidence what the majority refer to as the defendant's "incriminating statement." I infer from that designation that they

concede the statement falls short of being a confession and that they denominate it as incriminating because in it the defendant admits that he had been drinking intoxicating liquors prior to the fatal accident and identifies the liquor establishment where his purchases had been made, thereby furnishing the prosecution with leads from which evidence was obtained as to both the quantum and the time of his alcoholic consumption. The question of the admissibility of that statement having thus been raised at oral argument, the court granted defendant leave to file a supplemental brief in which he now for the first time contends that its admission, notwithstanding his failure to object thereto at trial, constituted error so prejudicial as to entitle him to a new trial.

The majority agree with defendant and hold that the admission of his incriminating statement having been elicited by the police during an interrogation strikes down his conviction because he had not prior to making that statement been warned by the police of his right to remain silent and advised by them of his right to the assistance of counsel. They reach that conclusion in reliance on *Escobedo* v. *State of Illinois,* 378 U. S. 478, 84 S.Ct. 1758, and without regard to the *circumstances of this case* which are substantially different from those surrounding the interrogation of Danny Escobedo. They disregard also both defendant's failure to object at trial to the admission of the statement and the silence of the trial record as to whether or not the warning and the advice were given. *Escobedo* is extended to its outermost limits and the majority now go much further than did the Chief Justice and my brother Powers in *State* v. *Dufour,* 99 R. I. 120, 206 A.2d 82. In that case the court was evenly divided on the thrust of *Escobedo.* My brother Paolino, who now writes for the majority, concurred in the result reached by the Chief Justice and my brother Powers. Because his concurrence was without opinion, it could not be determined whether his agreement

with the result they reached was grounded upon their holding that the accused was the victim of an illegal search and seizure or, on the alternative basis, that it was error to admit Dufour's confession for the reason that he had not been advised of his right to counsel and warned of his constitutional right to remain silent. Whatever doubts I may have had as to the reason for his concurrence in that case have now been removed.

While observing in passing the possible relevancy of rights guaranteed under our state constitution, *supra,* page 7, it is clearly evident that the majority hinge their conclusion on those guarantees possessed by an accused in criminal proceedings under the Bill of Rights and made obligatory upon the states by the fourteenth amendment to the federal constitution rather than on similar guarantees contained in the Declaration of Rights of our state constitution. It is the Bill of Rights upon which the Chief Justice's opinion in *State* v. *Dufour, supra,* is grounded, and in *Escobedo* and *Dorado* it was federal rights which were found to be violated. In effect the majority assume the role of forecasters of what the supreme court may in the future decide. Of course, I agree with the majority's statement "that the search for truth and justice is the ultimate goal." That sentiment is a truism with which all judges are in accord. In the attainment of that objective, however, the supreme court has not yet announced that the guarantees of the federal constitution make inadmissible *in all circumstances* a statement obtained by the police from an accused who is unadvised of his right to counsel and unwarned of his absolute right to remain silent. I would not extend the rule in *Escobedo* beyond the factual situation to which the supreme court in that case expressly confined it. See my concurring opinion in *State* v. *Dufour, supra.*

A substantial majority of the courts which have passed on the rule in *Escobedo* similarly restrict its application. *State* v. *Fox,* 257 Iowa 174, 131 N.W.2d 684; *People* v. *Hart-*

*graves,* 31 Ill.2d 375, 202 N.E.2d 33; *Pece* v. *Cox,* 74 N. M. 591, 396 P.2d 422; *Commonwealth* v. *Coyle,* 415 Pa. 379, 203 A.2d 782; *Commonwealth* v. *Patrick,* 416 Pa. 437, 206 A.2d 295; *State* v. *Elam,* 263 N. C. 273, 139 S.E.2d 601; *Ward* v. *Commonwealth,* 205 Va. 564, 138 S.E.2d 293; *Browne* v. *State,* 24 Wis.2d 491, 131 N.W.2d 169; *Bean* v. *State,* 81 Nev. 25, 398 P.2d 251; *Mefford* v. *State,* 235 Md. 497, 201 A.2d 824; *People* v. *Gunner,* 15 N. Y.2d 226; 205 N.E.2d 852.

See also the recent text published under the auspices of The American Bar Foundation entitled "Arrest: The Decision to Take a Suspect into Custody," where Professor Lafave at page 395 said: "The court in 1964, in the *Escobedo* case, did find a violation of constitutional right to counsel at the police station, necessitating suppression of the suspect's confession, but very cautiously limited the holding to the facts of that case * * *."

I am not unmindful of the contrary conclusions in *State v. Neely,* 239 Ore. 487, 395 P.2d 557, and *People* v. *Dorado,* 42 Cal. Rptr. 169, 398 P.2d 361. The California court, which divided 4-3, held on reargument that the facts of that case brought "it squarely within the rule of *Escobedo* with the exception that Dorado did not retain or request counsel," factors which in its opinion did not permit "a formalistic distinction" from the rule laid down in *Escobedo.* In *State* v. *Neely, supra,* the court, while expressly refraining from passing on the right to counsel, concluded that a failure to warn an accused of his right to remain silent made his confession inadmissible.

Even if the rule in *Escobedo* were to be extended it would not, in my opinion, be applicable in a case such as this where defendant's counsel expressly and not as a result of oversight, neglect, or inadvertence, refused to object to the admission of the statement. Indeed, defense counsel did more and in substance requested that the statement be admitted in order that it might become the basis for his

cross-examination of the interrogating police officers. Such a record precludes any conclusion other than that defendant, through his counsel, deliberately and intentionally elected against bringing into issue either the voluntariness of his incriminating statement or any other question which might affect its admission in evidence. That conduct, in my judgment, can only be described as trial strategy.

While I do not question that the practice in many jurisdictions imposes an affirmative burden on the prosecution to establish compliance with all constitutional safeguards as a predicate to the admission of an incriminating statement. it is nevertheless a condition precedent to the fulfillment of any such burden that an objection to its admission be interposed. *People* v. *Hegovic,* 348 Ill. 58; *Fisher* v. *State,* 233 Md. 48; *State* v. *Schmieder,* 5 N. J. 40. It has, moreover, until today, always been the rule in this state that alleged errors made by a trial justice will not be reviewed in this court unless the defendant has sought and received an adverse ruling. Absent such a ruling, coupled with an exception thereto, it has consistently been held that there is nothing to review. *State* v. *Casasanta,* 29 R. I. 587, 595; *State* v. *Arnold,* 64 R. I. 355, 360; *State* v. *Ruggiero,* 93 R. I. 241, 247. In short, the rule in this state requires contemporaneous objection or, in the absence thereof, at least a motion to strike so that the attention of the trial justice may be alerted to the issue raised and in order that on review there will be a duly excepted to ruling upon which this court may pass. Our rule, procedural though it may be, is designed to provide for an orderly and expeditious adjudication of criminal matters. It serves a legitimate state interest and failure to comply with it will preclude a defendant from asserting either in this court or in the federal courts that his constitutional rights have been violated. *Henry* v. *State of Mississippi,* 379 U. S. 443, 85 S. Ct. 564; *Commonwealth ex rel. Fox* v. *Maroney,* 417 Pa. 308, 207 A.2d 810.

In this case defendant was represented by counsel experienced in the trial of criminal cases who was well aware of the requirement of contemporaneous objection. As part of his trial tactics, deliberately adopted, he intentionally bypassed that requirement. By that conduct defendant forfeited his right to assert on review that the admission of the statement violated his federal constitutional rights. *Fay* v. *Noia,* 372 U. S. 391, 438, 439.

The majority say that this conduct of counsel cannot be construed as a waiver by defendant and they hold, relying on *Fay* v. *Noia, supra,* that: "There is nothing in the record indicating that defendant participated in his counsel's decision in this matter. Absent such participation defendant's constitutional rights cannot be waived."

In reaching that conclusion they both misread *Fay* v. *Noia,* and ignore the teachings of *Henry* v. *State of Mississippi,* 379 U. S. 443, 85 S. Ct. 564, 569, and *Douglas* v. *State of Alabama,* 380 U. S. 415, 85 S. Ct. 1074. Those cases make clear that a criminal defendant may be foreclosed from contending that he did not waive his federal constitutional rights, if his counsel consciously and intentionally ignored state procedures adopted in order to insure an orderly trial. Thus in *Henry* v. *State of Mississippi,* 379 U. S. 443, 85 S. Ct. 564, at page 569, Mr. Justice Brennan, who spoke also for the majority in *Fay* v. *Noia* said:

"The evidence suggests reasons for a strategic move. Both the complaining witness and the police officer testified that the cigarette lighter in the car did not work. After denial of its motion for a directed verdict the defense called a mechanic who had repaired the cigarette lighter. The defense might have planned to allow the complaining witness and the officer to testify that the cigarette lighter did not work, and then, if the motion for directed verdict were not granted, to discredit both witnesses by showing that it did work, thereby persuading the jury to acquit. Or, by delaying objection to the evidence, the defense might have

hoped to invite error and lay the foundation for a subsequent reversal. If either reason motivated the action of petitioner's counsel and their plans backfired, *counsels deliberate choice of the strategy would amount to a waiver binding on petitioner and would preclude him from a decision on the merits of his federal claim either in the state courts or here.*[7] Although trial strategy adopted by counsel without prior consultation with an accused will not, where the circumstances are exceptional, preclude the accused from asserting constitutional claims, see Whitus v. Balkcom, 333 F.2d 496 (C.A.5th Cir. 1964), *we think that the deliberate bypassing by counsel of the contemporaneous objection rule as a part of trial strategy would have that effect in this case.*" (footnote 7 omitted) (italics ours)

What clearer expression is required in order to establish that a violation of federal rights, assuming there has been such a violation, is *waived* when competent counsel for reasons of trial strategy not only fails to object, but indeed in effect consents to the admission of an incriminating statement.

I add, however, to what I have said that my opinion would be otherwise if the requirement of contemporaneous objection were a procedural technicality having no rational relationship to a well ordered trial. If such were the case, I would not insist, nor would I have any right to, on compliance at the expense of ignoring a defendant's constitutional rights. See *Brown* v. *State of Mississippi,* 297 U. S. 278; *Blackburn* v. *State of Alabama,* 361 U. S. 199; my concurring opinion in *State* v. *Dufour,* 99 R. I. 120, 206 A.2d 82, 88. It is otherwise, however, when the procedure deliberately bypassed is basic to our adversary system of trial. In such a case, insistence may be mandated and in any event is justified. When such a procedure is intentionally disregarded by competent trial counsel, in my judgment the constitutional right, which might have been brought into issue by compliance, is waived. It matters not either

that the accused did not participate in his counsel's decision, nor that the trial strategy deemed advantageous to the accused's cause when adopted subsequently backfired.

I freely concede that what I here say as to the necessity of an objection by defendant to bring upon the record the question of the admissibility of a confession might not be germane if the meaning of *Escobedo* were that the sixth amendment mandates that every suspect must during police interrogation, absent affirmative waiver, be advised of his right to counsel and warned of his constitutional right to remain silent. See *State* v. *Johnson*, 43 N. J. 572, 206 A.2d 737, 743. If that were the meaning which the majority give to *Escobedo,* the issue would not turn on the admission of an incriminating statement but on whether the commencement of police interrogation is the critical moment at which the right to counsel attaches. The majority do not so construe *Escobedo,* but instead hold that the admission of an incriminating statement made to the police during an "investigation" in the absence of advice to the accused of his right to counsel or warning of his right to remain silent renders his conviction void. It is upon that hypothesis that in my view noncompliance for reasons of trial strategy by competent counsel with the requirement of contemporaneous objection should prevent consideration upon review of the question of the admissibility of defendant Mendes' statement.

The conclusion is inescapable that the majority announce two new rules. Specifically, they fix a different test from that which has heretofore been in effect for the admission of an incriminating statement given by an accused while in police custody at the station house. In order to make that principle applicable to the facts of this case, they also hold that where constitutional rights are at issue, an accused *cannot* be bound by the trial judgments of his counsel, however competent, unless he has participated in the process leading to the decision as to whether an objection should

be made or an exception taken. The implications of the latter pronouncement are both manifold and disturbing. Referring, however, only to the specific, an incriminating statement may no longer be admitted into evidence, even though not objected to, unless inquiry has first been made as to whether there has been compliance with the new standards. Again, the majority go further than the supreme court in *Escobedo* or the California court in *People* v. *Dorado*, 42 Cal. Rptr. 169, 398 P.2d 361. In each of those cases the record affirmatively showed that neither the advice nor the warning had been given. In short, it is now mandatory upon a trial justice to inquire from the interrogating police officer prior to the admission of an incriminating statement, if counsel has not, whether prior to the questioning of an accused at the station house he was advised of his right to counsel and warned of his right to remain silent. This may be a salutary procedural rule but it represents an abrupt break with the past and a departure from what until today has always been the accepted practice in this state. I cannot agree that the reasoning in *Escobedo* either compels or invites that result.

It would serve no useful purpose to consider the other exceptions before the court. On the assumption that they are without merit, I would overrule them and remit the case to the superior court for further proceedings.

ROBERTS, J., concurs in the dissenting opinion of JOSLIN, J.

*J. Joseph Nugent,* Attorney General, *Francis A. Kelleher,* Assistant Attorney General, for State.

*Dick & Carty, Joseph B. Carty,* for defendant.