221 A.2d 620.

STATE *vs.* ANDREW GANNITES.

JULY 19, 1966.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This indictment charging the defendant with the murder of a police officer is before us for the second time. When first here we reversed on the ground that the jury had been incorrectly charged on the issue raised by the defendant's plea of insanity. *State* v. *Gannites*, 91 R. I. 209. Thereafter in June of 1961 the defendant was again tried before a justice of the superior court sitting with a jury and was again found guilty. He is now serving a life sentence. His bill of exceptions was allowed and the

papers in the case were certified here on May 23, 1963. The case was submitted to us on briefs on June 10, 1966, both parties with our permission having waived oral arguments. The long delay between the docketing of the bill of exceptions and the submission is attributable to the parties and not to a crowded condition of our docket.

The only substantial question is whether the admission into evidence over defendant's objections of certain inculpatory oral and written statements made under the following described circumstances makes necessary the granting of a new trial.

On January 6, 1958 shortly after noontime defendant, then under suspicion of having at about 6 o'clock that morning shot and killed an East Providence policeman, was apprehended by the police and taken to the office of deputy chief Hourigan in the Pawtucket police station. It was then about 1:15 p.m. Hourigan knew Gannites from previous contacts and without any preliminary interrogation asked him "Andy, who shot the policeman?" Gannites answered, "I did, Mr. Hourigan." Gannites was questioned intermittently throughout the remainder of that day and its early evening and was also taken to the place where the murder weapon had been hidden as well as to the scene of the killing where at the request of the police he participated in a reenactment of what had taken place early that morning. At about 11:15 that night after approximately two hours of continuous questioning Gannites signed a statement in which he confessed to the fatal shooting.

The confession which is in question and answer form opens with Gannites' statement that it is made voluntarily without any threats or coercion or promise of reward or leniency and with the knowledge that whatever might be said could be used for or against him. It, as well as certain oral admissions made during his custodial interro-

gation starting with the original statement, "I did, Mr. Hourigan," was introduced into evidence at the trial, some over and others without objection. The record fails to disclose that defendant was at any time before or during the interrogation either advised that he could maintain his silence or told that he had the right to have either retained or appointed counsel present.

The submission in this court followed in point of time our decisions in *State* v. *Dufour,* 99 R. I. 120, 206 A.2d 82, and *State* v. *Mendes,* 99 R. I. 606, 210 A.2d 50, and came after arguments but before decisions in *Miranda* v. *State of Arizona,* 384 U. S. 436, and *Johnson* v. *State of New Jersey,* 384 U. S. 719.

In *Dufour* and in *Mendes* the justices of this court sharply disagreed, as have judges wherever the question has arisen, on the implications which flow from *Escobedo* v. *Illinois,* 378 U. S. 478. By a one-vote majority this court which had divided evenly in *Dufour* on the thrust of *Escobedo* enlarged it in *Mendes* beyond its precise factual situation and held that the failure of the police to advise a defendant of his right to remain silent and to the assistance of counsel during his custodial interrogation made his incriminating statement inadmissible.

Whatever doubts which the opinion in *Escobedo* may have created in the courts as to its true meaning have now in the light of *Miranda* where the court divided 5 - 4 been resolved. *Escobedo* has been enlarged and the rule now in both the state and the federal courts is that evidence of exculpatory or inculpatory statements made by an accused during in-custody interrogation is inadmissible unless he has clearly and unequivocally been advised of his right to remain silent, warned that anything he may say can be used against him, and told that he is entitled to the presence of retained or appointed counsel during the questioning process.

Having announced the rule the court was still faced with whether it should be applied prospectively or retrospectively. This was decided in *Johnson* v. *State of New Jersey, supra,* which, although argued at the same time as was *Miranda,* was not decided until a week later. There the court, this time with seven justices voting in favor of the conclusion, came face to face with the problem of whether *Escobedo* and *Miranda,* notwithstanding the long-settled principles which they overturned, were to be applied retroactively. Influenced obviously by the considerations but recently expressed in *Linkletter* v. *Walker,* 381 U. S. 618, which go to the "administration of justice and the integrity of the judicial process" the majority refused retrospective application to *Escobedo* or *Miranda.* An additional compelling reason undoubtedly was that a rule of retrospectivity "would require the retrial or release of numerous prisoners found guilty by trustworthy evidence in conformity with previously announced constitutional standards." *Johnson* v. *State of New Jersey, supra.*

While reiterating the principle announced by Mr. Justice Cardozo in *Great Northern Ry.* v. *Sunburst Oil & Refining Co.,* 287 U. S. 358, 364, which gives to each state the right to "make a choice for itself between the principle of forward operation and that of relation backward," the court in *Johnson* held that any accused whose trial begins after the June 22, 1964 date of the *Escobedo* decision is protected against the use of a statement elicited by the police during an interrogation purposed upon obtaining an incriminating statement if he had "requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent * * *." *Escobedo* v. *Illinois* at 491. In addition, *Johnson* holds that an accused whose trial begins after the June 13, 1966 date of the *Miranda* decision is protected against the use at a criminal trial of an exculpatory or inculpatory state-

ment elicited by the authorities during in-custody interrogation unless prior to questioning he has been warned that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda* v. *Arizona, supra* at 479.

For the same reasons which influenced the supreme court we refuse to give retroactive effect to either *Escobedo* or *Miranda* beyond what may be constitutionally required of us by *Johnson*. While we apply the *Johnson* principle of prospective application to *Mendes* we hinge it to the time of the interrogation rather than to the date of the commencement of the trial. Recognizing that the passage of a reasonable time was necessary to disseminate our opinion and to apprise the authorities of the strictures it imposed upon the investigatory process, we now hold that the amplification given to *Escobedo* by the majority in *Mendes* is to be applied only to persons whose in-custody interrogation took place at least thirty days after our May 10, 1965 decision in that case.

That retroactive application would result in a disservice to the public interests and to a proper enforcement of our laws is graphically illustrated by the facts of this case. Gannites does not claim that his statements were involuntary, or that his constitutional rights as they were understood when he was questioned at the police station or tried at the courthouse were violated. Indeed, he does not even contend that he is not guilty of the crime with which he is charged. Instead he seeks the protection of constitutional safeguards which were unheard of when he was interrogated and unknown when he was tried. He argues for a reversal on the ground that the rule the majority announced in *Mendes* in 1965 made inadmissible

at his trial in 1961 his 1958 confessions of guilt to the police including his very first response to the very first question asked of him within minutes after his apprehension upon probable cause for the cold-blooded killing of a police officer. To hold now, in the absence of any requirement constitutional or otherwise, that Gannites should have been given the warnings and advice made obligatory by *Mendes* the necessity for which could not have been known to the police at his interrogation, would strain the concepts of what either fairness or reasonableness demands.

In considering what is fair and just in these circumstances, *Linkletter* v. *Walker*, 381 U. S. 618 (1965), and *Tehan* v. *United States, ex rel. Shott*, 382 U. S. 406 (1966), make it clear that our constitution "neither prohibits nor requires retrospective effect" and that we are at liberty to "weigh the merits and demerits," to consider the pros and the cons and to strike a balance between the interests of an accused and those of society. When we strike that balance we must be mindful, as Mr. Justice White put it in his dissent in *Miranda* at 537, that "More than the human dignity of the accused is involved; the human personality of others in the society must also be preserved."

In our judgment, the interests of society in cases like this far outweigh those whose trials antedated *Escobedo* and *Miranda* and whose interrogation preceded *Mendes*. There being no persuasive reason or precedent requiring otherwise, we apply *Escobedo, Miranda* and *Mendes* prospectively and to the extent as in each instance we have indicated. Our ruling of prospectivity applies to cases whether here on direct appeal or otherwise.

The defendant has a further contention. His trial began on May 8, 1961 and the first day was consumed in the examination of prospective jurors. When court convened the following morning defendant moved for a mistrial on the ground that a news broadcast reporting on the

pending trial had referred to his prior conviction and the ordering of a new trial on a technical ground. In arguing the motion counsel with candor advised the court that he had been unable to verify that the contents of the broadcast were in fact as stated by him and in response to a question from the bench agreed that he intended as a part of his defense to make use of the transcript of the earlier trial.

We find nothing in the circumstances relied on by defendant which in any way either menaced or threatened the integrity of his trial or so disturbed its atmosphere that the conclusions of the jury would be induced by anything other than the evidence and the arguments. *Craig* v. *Harney*, 331 U. S. 367; *Patterson* v. *Colorado ex rel. Atty Gen.*, 205 U. S. 454, 462; *Sheppard* v. *Maxwell*, 384 U. S. 333. The defendant's exception to the denial of his motion for a mistrial is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court.

*J. Joseph Nugent*, Attorney General, *Corinne P. Grande*, Special Assistant Attorney General.

*Leo Patrick McGowan*, Public Defender, *Eugene F. Toro*, Special Counsel to Public Defender.