**255 A.2d 731.**

GIACOMO RUGGIERO *vs.* HAROLD V. LANGLOIS, *Warden.*

JULY 9, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. This petition for a writ of habeas corpus was brought to secure the release of the petitioner from the allegedly unlawful custody of the respondent warden. The petitioner had been in the custody of the respondent since November 17, 1961, when he was committed thereto pursuant to the imposition of a sentence of 10 years by a justice of the superior court after he had been found guilty of manslaughter by a jury.[1] The petition was heard on its merits in the spring of 1965, and after oral argument it was taken under consideration by the court. On July 16, 1965, we filed an opinion in which we stated that decision on the petition was reserved and that both the respondent and the petitioner were to be allowed additional time in which to file amendments to the respondent's return and to the petitioner's petition. See *Ruggiero* v. *Langlois,* 100 R. I. 186, 211 A.2d 823.

In the pleadings as constituted in 1965, petitioner had alleged that during his custodial interrogation by the Warwick police on March 13 and 14, 1959, he was not warned of his right to remain silent during such interrogation or of his right to have the assistance of counsel. Such failure on the part of his interrogators, he contends, violates the rule laid down in *Escobedo* v. *Illinois,* 378 U. S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. He further argues that the admission at his trial on May 25, 1959, of the statements made by him during such interrogation violated his constitutional rights and rendered the trial and conviction null and void.

---

[1] It appears from the amended petition that on October 5, 1965, the petitioner was paroled into the custody of the Bureau of Probation and Parole of the state of Rhode Island. Nothing in the record indicates that parole has been revoked or otherwise curtailed. In the circumstances, however, we will consider the petitioner as still being technically in the custody of the respondent warden, but whatever conclusions we reach shall apply as well to the Bureau of Probation and Parole of the state of Rhode Island.

On the other hand, respondent in his pleadings, apparently conceding that the *Escobedo* warnings, so called, had not been given petitioner at the time of his custodial interrogation, argued primarily that the *Escobedo* rule should not be given a retroactive application to a conviction that had become final before *Escobedo* was decided.

In our prior opinion we directed attention to the state of the pleadings that confronted us with the necessity of either presuming an infringement of petitioner's constitutional rights or of dredging the entire record in the cause to determine whether such an invasion of his constitutional rights could be ascertained from the facts appearing therein. We said that if the alleged violation of his constitutional rights did not appear as of record, there remained the question whether such an invasion of his constitutional rights could be established by evidence extrinsic to the record and, if so, whether a factual hearing should be had on that issue.

In the prior opinion, having reserved decision, we granted respondent time within which to amend his return to the writ in such a manner as he might deem appropriate and further allowed petitioner time to amend his petition "* * * in any suitable informal manner that will inform the court whether proof of the alleged denial of his constitutional rights during the extrajudicial interrogation on March 14 requires the production of evidence other than the matters set out in the record of the judicial proceedings * * *."

Thereafter, respondent filed an amended return, which contains a number of formal denials of the allegations of the petition. However, in the amended return respondent appears to rely primarily upon his allegation that the record will establish "* * * that the petitioner waived whatever constitutional rights might have been attached to him at the time of the making of the said statements * * *," or, in other words, alleges an intelligent and voluntary re-

linquishment of the warnings involved in the *Escobedo* rule.

The petitioner also filed an amended petition, in which he reiterates his contention that there was a failure at the time of the interrogation to warn him of his right to remain silent and his right to the assistance of counsel. While continuing to rely on *Escobedo* v. *Illinois, supra,* he also directs our attention to the rule stated by this court in *State* v. *Mendes,* 99 R. I. 606, 210 A.2d 50. In addition to reiterating his reliance on the *Escobedo* doctrine in his amended petition, he alleges further that the statements concerning the circumstances surrounding the death of the child were involuntary and coerced. This contention he rests upon the fact that the interrogation extended over a two-day period beginning on March 13 and continuing over into March 14 and that in the circumstances surrounding the interrogation the atmosphere was such that his will was overborne and his statements were involuntarily made. Like respondent, he also alleges that an examination of the record is sufficient to disclose not only that he was not informed of his right to remain silent and his right to the assistance of counsel, but also that the circumstances surrounding his interrogation were sufficient to render the statements made therein involuntary.

We turn then, first, to a consideration of petitioner's contention that his conviction was rendered void by the admission of statements made during his in-custody interrogation without having been informed as to his constitutional right to remain silent and to the assistance of counsel. This contention, in our opinion, avails petitioner nothing. In *Johnson* v. *New Jersey,* 384 U. S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, the Supreme Court held that the *Escobedo* doctrine should not be given a retroactive application but applied only to cases where the trial began after June 22, 1964. The trial of petitioner began on May 25, 1959, and

clearly, therefore, the mandate of *Escobedo* is without application in his case.

We reach the same conclusion concerning the contention that his conviction was rendered void by reason of our amplification of the rule stated in *Escobedo* in *State* v. *Mendes, supra.* In *State* v. *Gannites,* 101 R. I. 216, 221 A.2d 620, we passed upon the question of whether the rule thus stated in *Mendes* was to be applied retroactively. In *Gannites* we said at 221, 221 A.2d at 623: "* * * we now hold that the amplification given to *Escobedo* by the majority in *Mendes* is to be applied only to persons whose in-custody interrogation took place at least thirty days after our May 10, 1965 decision in that case." The record clearly discloses that the in-custody interrogation of petitioner here took place on March 13 and 14, 1959. We conclude then that the doctrine laid down in *Escobedo* and our amplification thereof in *Mendes* is without application in the instant case.

The amended petition further stresses a contention not raised in the original petition. The language of the amended pleading is to the effect that during the interrogation in March 1959 "* * * the petitioner was denied an opportunity to sleep for a lengthy period of time thus creating a situation wherein the defendant involuntarily made certain damaging statements which were subsequently used against him during the trial." The petitioner points out no other specific conduct that took place during the period of interrogation that he claims partook of the character of coercion. It is obvious that petitioner is now raising a question as to whether in all the surrounding circumstances the interrogation was such as to create an atmosphere of compulsion that had the effect of overriding his will and causing him to involuntarily make admissions which subsequently were introduced at trial.

In advancing this contention, petitioner is apparently

relying on the rule stated in *Haynes* v. *Washington,* 373 U. S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513. In that case, speaking of such situations, the court said that " 'the question in each case is whether the defendant's will was overborne at the time he confessed * * *.' " *Id.* at 513, 83 S.Ct. at 1343, 10 L.Ed.2d at 520. The court then went on to sum up the situation by saying that the true test of admissibility of such confession is that it be freely made, voluntary, and without compulsion or inducement of any sort. The question then is whether petitioner has disclosed a situation wherein the totality of the circumstances under which the interrogation was conducted and the statements were made constituted an involuntary disclosure of such statements. In *Haynes* v. *Washington, supra,* the court declared that all interrogation is not impermissible. The court said at 515, 83 S.Ct. at 1344, 10 L.Ed.2d at 521: "Such questioning is undoubtedly an essential tool in effective law enforcement. The line between proper and permissible police conduct and techniques and methods offensive to due process is, at best, a difficult one to draw, particularly in cases such as this where it is necessary to make fine judgments as to the effect of psychologically coercive pressures and inducements on the mind and will of an accused."

In situations such as the one with which we are now confronted it is extremely difficult to make the value judgments that are required to determine whether the conduct of the police in the course of interrogation was such as to override the will of the accused and to make his statements involuntary. In *Spano* v. *New York,* 360 U. S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265, the United States Supreme Court disclosed its recognition of the fact that law enforcement officials over the years have become increasingly aware of the burden they share along with the courts in protecting the fundamental rights of the citizen, including that portion of our citizenry suspected of crime. They note that

they are no longer confronted with cases of severe physical brutality or inhuman extended and uninterrupted interrogation. The court said: "But as law enforcement officers become more responsible, and the methods used to extract confessions more sophisticated, our duty to enforce federal constitutional protections does not cease. It only becomes more difficult because of the more delicate judgments to be made." *Id.* at 321, 79 S.Ct. at 1206, 3 L.Ed.2d at 1271.

The *Spano* case presents an excellent example of the totality of circumstances in which the petitioner's will was overcome. There the court noted that the accused was a foreign-born young man of 25, whose education was limited to one-half year in high school and who had a history of emotional instability. His interrogation, described by the court as a "massive official interrogation," was conducted by a number of police officers and continued for eight hours, interrupted only to change the location from one office to another. He was denied the right to talk to an attorney he had retained, and a childhood friend who had become a member of the police department was employed to attempt to persuade the accused that if he did not confess, it would interfere with his police career. In all of these circumstances the court concluded that the will of the accused had been overborne by official pressure, fatigue, and a falsely aroused sympathy and held the confession to have been coerced. From the record the court concluded that the officers who conducted the interrogation "* * * were rather concerned primarily with securing a statement from defendant on which they could convict him. The undeviating intent of the officers to extract a confession from petitioner is therefore patent." 360 U. S. at 324, 79 S.Ct. at 1207, 3 L.Ed.2d at 1272.

We are unable to conclude that the circumstances in the instant case had the same effect. Here, from what the record discloses, petitioner was taken into custody on the after-

noon of March 13 and his interrogation, as such, began in the late evening of March 13 and was carried through until the late afternoon of the fourteenth. It appears that about 1 a.m. on the fourteenth he had made a statement after about one-half hour's questioning, with which the police were not satisfied. Subsequently, the interrogation continued, and about 4 o'clock in the morning another statement was obtained. Again the police were not satisfied with the statement, and about 10 a.m. on the fourteenth he was questioned by the city solicitor of the city of Warwick and the Chief of Police. Subsequently, about 1 p.m. on the fourteenth he agreed to go with the police to the state police barracks at Lincoln and, when arriving there, was interrogated again by a state police officer. The record discloses that petitioner had no sleep, at least from the late evening on the thirteenth until the afternoon of the fourteenth, but that he was fed sandwiches and coffee and that at breakfast-time he was offered breakfast but accepted only several cups of coffee.

The record is devoid of any testimony that petitioner was threatened or intimidated during the interrogation. We attach considerable significance to this absence of evidence of a strong determination on the part of the interrogators to extract a confession of guilt from petitioner. The absence of such pressure tactics on the part of the police is evidenced by the fact that the entire interrogation produced no statement that conceded guilt. Rather, all of the statements made were of an exculpatory nature designed to establish that the death of the child had resulted from an accidental fall. As we have said, we attach significance also to the fact that apart from a want of sleep, petitioner was well treated, being provided with food and with beverages during the course of the interrogation.

In these circumstances we cannot accept the argument that the interrogation was unusually intensive or was con-

ducted in such a manner as to insure a confession of guilt on the part of petitioner. Nothing in the record indicates that petitioner was intellectually inferior in any marked degree to his interrogators or that he was without experience in dealing with police questioning when suspected of a crime. In other words, we are unable to say that in all of the circumstances which the record here discloses the interrogation here, in its essence or the method of its conduct, can be reasonably held to have overborne the will of petitioner and caused him to make statements that were not entirely voluntary. We, therefore, conclude that the statements made by petitioner were made voluntarily and that the admission of such statements into evidence was not violative of petitioner's constitutional rights under the fifth amendment.

Because we take this view, it will not be necessary for us to consider the respondent's contention that the petitioner had intelligently and voluntarily waived his constitutional rights.

The petition for habeas corpus is denied and dismissed, and the writ heretofore issued is quashed.

*James Cardono,* Public Defender, *Moses Kando,* Asst. Public Defender, for petitioner.

*Corinne Grande,* Asst. Attorney General, for respondent.