370 A.2d 1273.

STATE *vs.* RONALD C. DELOMBA.
STATE *vs.* ARTHUR GOMES.

STATE *vs.* CHARLES H. FENNER.
RAYMOND A. DUFFY *vs.* JAMES W. MULLEN, *Warden.*

MARCH 16, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin. Kelleher and Doris, JJ.

674

JOSLIN, J. These four cases were consolidated for argument before this court. They raise a common issue of law concerning probation and deferred sentence violation hearings. Three of the cases came here on direct appeal from Superior Court judgments entered at the conclusion of violation hearings. The appeal in one of those cases has since been dismissed as moot. *State* v. *Gomes,* 117 R. I. 980, 370 A.2d 242 (1977). In the fourth case, *Duffy v. Mullen,* 117 R.I. 673, 370 A.2d 1273 (1977), we do what we did in a comparable situation in *State* v. *Lanoue,* 117 R.I. 342, 345, 366 A.2d 1158, 1160 (1976), that is, articulate Duffy's purported appeal from the denial of his petition for habeas corpus as if it were an appeal from the denial of an application for postconviction relief.

The relevant facts of the three cases now pending may be summarized briefly. Each defendant was presented to the Superior Court as an alleged violator of the terms and conditions of his probation (or, in the case of defendant Fenner, of a deferred sentence agreement) on grounds that were also the basis of an independent criminal charge on which he had not yet been tried. Two of the defendants testified at their violation hearings; the other did not. Each was declared a violator, and each had his probation or deferred sentence revoked as a result. Each of the substantive criminal offenses upon which the revocations were based had a different disposition: defendant DeLomba has not been indicted, nor has an information been filed against him; defendant Fenner was tried and acquitted by a jury;

and defendant Duffy[1] was brought to trial and, at the conclusion of the state's case, his motion for entry of a judgment of acquittal was granted.

The defendants contend that the practice in this state of holding a violation hearing prior to the trial of the underlying criminal charge confronts an alleged violator with the constitutionally obnoxious dilemma of either not taking the stand and thereby abandoning his constitutional right to be heard in his own behalf[2] or testifying in his own defense at the violation hearing and thereby running the risk that the evidence disclosed may be used to incriminate him at a subsequent criminal trial. To require that choice, defendants argue, creates an intolerable tension between constitutional rights which can only be alleviated by forcing the state either (1) to alter the current practice of holding a violation hearing prior to the criminal trial, or (2) to immunize a defendant's testimony at his prior violation hearing from use at his criminal trial.

These claims are not novel. We rejected them when previously advanced because we found no constitutional mandate compelling the state to elect either alternative. *Gonsalves v. Howard*, 113 R.I. 544, 548, 324 A.2d 338, 341 (1974); *State v. Bettencourt*, 112 R.I. 706, 711-12, 315 A. 2d 53, 55-56 (1974); *Flint v. Howard*, 110 R.I. 223, 235,

---

[1] For convenience we refer to Duffy as a defendant along with DeLomba and Fenner, even though he is seeking postconviction relief and therefore should technically be referred to as an applicant.

[2] It is no longer open to question that an alleged violator has a constitutional right to be heard. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L. Ed. 2d 656, 662 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 487-89, 92 S.Ct. 2593, 2603-04, 33 L. Ed. 2d 484, 498-99 (1972); *State v. Bettencourt*, 112 R. I. 706, 708-09 n.2, 315 A.2d 53, 54 n.2 (1974); *O'Neill v. Sharkey*, 107 R. I. 524, 529, 268 A.2d 720, 723 (1970); *Harris v. Langlois*, 98 R. I. 387, 391-92, 202 A.2d 288, 290-91, *cert. denied*, 379 U.S. 866, 85 S. Ct. 138, 13 L. Ed. 2d 70 (1964).

291 A.2d 625, 631, *cert. denied,* 409 U.S. 1078, 93 S.Ct. 694, 34 L.Ed.2d 667 (1972).[3]

In the cases now before us, however, defendants argue that the unfairness of the current practice, even if not so severe as to rise to the level of a constitutional deprivation, is nevertheless so real and substantial that it calls for action by us on public policy grounds and in furtherance of our responsibility to assure a sound and enlightened administration of justice.

Although we rejected that approach in *State* v. *Bettencourt, supra,* we did not close the door to future consideration of the argument now advanced. Instead, we deferred, at least for the moment, to the Legislature the determination of whether public policy considerations, as distinguished from constitutional imperatives, dictated an alteration of revocation procedures. *Id.* at 712, 315 A.2d at 56. In the 3 years that have elapsed since *Bettencourt* was decided, the Legislature has taken no action on the problem of whether too high a price is presently exacted from an accused violator for exercising his right to be heard. That being so, we do not believe that any useful purpose would be served by our continued abstention. We have therefore decided to proceed under the broad grant of super-

---

[3]Subsequent to our opinion in *Flint v. Howard,* 110 R. I. 223, 291 A.2d 625, *cert. denied,* 409 U. S. 1078, 93 S. Ct. 694, 34 L. Ed. 2d 667 (1972), Flint applied to the United States District Court for the District of Rhode Island for a writ of habeas corpus. That court held that the denial of use immunity for statements made by Flint in his own defense at the violation hearing constituted a denial of due process. *Flint* v. *Mullen,* 372 F. Supp. 213 (D.R.I., 1973). The United States Court of Appeals for the First Circuit reversed. *Flint* v. *Mullen,* 499 F.2d 100 (1st Cir.), *cert. denied,* 419 U. S. 1026, 95 S. Ct. 505, 42 L. Ed. 2d 301 (1974). For commentary on the *Flint* line of cases see *The United States Court of Appeals for the First Circuit, 1973-1974 Term,* 9 Suffolk U.L. Rev. 269, 589-602 (1975); Comment, *The Right to be Heard and the Privilege Against Self-Incrimination in the Rhode Island Deferred Sentencing Procedure,* 55 B.U.L. Rev. 847 (1975).

visory jurisdiction over inferior tribunals that our constitution[4] and implementing legislation[5] have conferred upon us. *See State* v. *Fortes,* 114 R.I. 161, 172, 330 A.2d 404, 410-11 (1975); *accord, People* v. *Coleman,* 13 Cal. 3d 867, 872, 533 P.2d 1024, 1030, 120 Cal. Rptr. 384, 390 (1975). In thus assuming a creative judicial role, we complement rather than invade the legislative function. *Wilkinson* v. *Harrington,* 104 R.I. 224, 230, 243 A.2d 745, 749 (1968).

Initially, defendants suggest a reordering of the proceedings so that a violation hearing based solely on the commission of another crime will not be initiated until after the disposition of the related criminal charge. This is the operating policy recommended in ABA Project on Standards for Criminal Justice, *Standards Relating to Probation* §5.3 (Approved Draft, 1970). To adopt that policy would certainly obviate any claim by an alleged violator that speaking up in his own behalf at his violation hearing might involve a loss of his privilege against self-incrimination at his subsequent criminal trial. The state, on the other hand, argues that a compulsory reordering would make it impossible to move swiftly against an alleged violator in the interest of public safety.

As an offshoot of their reordering proposal, defendants argue that an alleged violator should receive two hearings: first, a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he violated his probation or deferred sentence agreement; and second, a final hearing following comple-

---

[4]"The Supreme Court shall have final revisory and appellate jurisdiction upon all questions of law and equity." R. I. Const. amend. XII, §1.

[5]General Laws 1956 (1969 Reenactment) §8-1-2 provides in part as follows:

"The Supreme Court shall have general supervision of all courts of inferior jurisdiction to correct and prevent errors and abuses therein when no other remedy is expressly provided * * *."

tion of the criminal proceedings to determine whether he is, in fact, a violator and, if so, what his punishment should be. They further contend that this two-hearing procedure is constitutionally mandated under *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656, 662 (1973).[6] But "[d]ue process does not, of course, require two hearings," *Goldberg* v. *Kelly*, 397 U.S. 254, 267 n.14, 90 S.Ct. 1011, 1020 n.14, 25 L.Ed.2d 287, 298 n.14 (1970), and nothing in *Scarpelli* purports to interdict a combined revocation and sentencing hearing at which the alleged violator receives the full panoply of due process rights mandated by *Morrissey* v. *Brewer*, 408 U.S. 471, 488-89, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484, 498-99 (1972). Thus, no constitutional purpose would be served by bifurcating our present unitary judicial violation hearing, at which an alleged violator is afforded due process rights equal or superior to those required in a *Scarpelli* final hearing. Neither the federal nor our own state constitution requires empty ceremonies. *Accord, People* v. *Buford,* 42 Cal. App.3d 975, 980-81, 117 Cal. Rptr. 333, 336-37 (1974); *People* v. *Jackson,* 63 Mich. App. 241, 245-48, 234 N.W.2d 467, 469-71 (1975); *Moore* v. *Stamps,* 507 S.W.2d 939, 950-51 (Mo. App. 1974).

Nor are we persuaded by defendants' assertion that we should adopt a bifurcated hearing requirement on policy grounds. True, it would remove the conflict between con-

---

[6] In *Gagnon* v. *Scarpelli,* 411 U. S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), a probationer, after being arrested for committing a burglary, was brought before a probation officer who, without giving him either a hearing or the right to counsel, revoked his probation. On those facts, the Court concluded that the initial administrative hearing should have been limited to determining whether there was probable cause for detention, and that the question of whether to revoke the probation should have been determined at a second hearing in which the accused would be entitled to the full procedural due process rights set forth in *Morrissey* v. *Brewer,* 408 U. S. 471, 488-89, 92 S. Ct. 2593, 2604, 33 L. Ed. 2d 484, 498-99 (1972).

stitutional rights that exists under our current practice. This is so because an alleged violator would be in no danger of having a deferred sentence or probation permanently revoked at the preliminary hearing; consequently, he would be under little or no pressure to testify at that hearing. Adoption of that requirement would not, however, protect the public against the danger of allowing a high-risk alleged violator to be at large pending a final hearing any more than would a reversal of the order of the proceedings. Moreover, an attempt to guard against that risk by holding such a violator without bail pending the final hearing might raise serious questions under our constitution, which provides that

> "[a]ll persons imprisoned ought to be bailed by sufficient surety, unless for offenses punishable by death or by imprisonment for life, when the proof of guilt is evident or the presumption great." R.I. Const. art. I, §9.

As an alternative to changing the timing of violation hearings, defendants urge the adoption of an exclusionary rule immunizing an accused's violation hearing testimony, and any evidence derived therefrom, from use at his subsequent criminal trial for an offense stemming from the same incident. Such a rule, they say, will not only have the practical effect of permitting an accused violator to speak in his own defense at a violation hearing, but will also completely remove any incentive for the state to use the scheduling of a violation hearing as a means of gaining an unfair advantage at the criminal trial, and will do so without any countervailing inconvenience to the state or impingement upon the due administration of justice.

We are inclined to agree with defendants' evaluation of a rule of immunity. Perhaps, were we required to choose between the proposed alternatives, we would adopt an immunity rule. But we are not required to make that choice, and accordingly we hold that henceforth the state must

either hold the violation hearing first and give the alleged violator use and derivative use immunity for any testimony he may give, or postpone the violation hearing until after the criminal trial. In our judgment, a practice so structured will be essentially fairer than our present procedure. *See Flint* v. *Mullen*, 499 F.2d 100, 105-06 (1st Cir.) (Coffin, C.J., dissenting), *cert. denied*, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974).

Our holding is intended to encourage the fullest possible *truthful* disclosure of relevant facts and circumstances at a violation hearing. Thus, although the mere fact that a defendant takes the stand at a criminal trial will not open the door to admission of his prior violation hearing testimony, such testimony and its fruits will be available to impeach or rebut clearly inconsistent testimony volunteered by the defendant at that trial. Likewise, the alleged violator may, notwithstanding a grant of immunity, be prosecuted for any perjury or false swearing committed in answering or in producing evidence either at the violation hearing or at the subsequent criminal trial. The protection extended does not give him a right to lie in his own behalf. *People* v. *Coleman*, 13 Cal. 3d 867, 892-94, 533 P.2d 1024, 1044-45, 120 Cal. Rptr. 384, 404-05 (1975); *cf. Harris* v. *New York*, 401 U.S. 222, 226, 91 S.Ct. 643, 646, 28 L.Ed.2d 1, 5 (1971) (statements obtained in violation of *Miranda* admissible for impeachment).

The rule announced today has been fashioned in the interest of the sound administration of justice. That same interest demands that, except for the cases now before us, the rule be given prospective effect only. *People* v. *Coleman, supra* at 897, 533 P.2d at 1047, 120 Cal. Rptr. at 407. Moreover, we recognize that the state will require a reasonable period of time to decide whether it wishes to postpone currently scheduled revocation hearings or to proceed with them under a grant of immunity to the alleged violators.

*Cf. State* v. *Gannites*, 101 R.I. 216, 221, 221 A.2d 620, 623 (1966). Accordingly, the rule that the state must either grant an accused violator immunity for his violation hearing testimony or delay the violation hearing until after the criminal trial shall become operative 30 days after the date of filing of this opinion. *Id.* at 221, 221 A.2d at 623.

All that remains is to apply what we have said to each of the cases now before us.

The defendant DeLomba has not yet been tried for the alleged crime underlying his probation revocation. At his trial, his violation hearing testimony and its fruits shall be immunized. However, since he chose to testify at his violation hearing, he was not prejudiced by the lack of an immunity rule at that time; consequently, he is not entitled to relief from the revocation of his suspended sentence. Accordingly, his appeal is denied and dismissed, and the judgment with respect to him is affirmed.

The defendant Fenner did not testify at his violation hearing. We may presume that he was deterred from doing so by the desire to preserve his privilege against self-incrimination at his subsequent criminal trial, which has since been held and which resulted in his acquittal. He should have been permitted to testify at his violation hearing under a grant of immunity. Accordingly, his appeal is sustained, the judgment with respect to him is reversed, and his sentence for violating his deferred sentence agreement is vacated. If a new violation hearing is held, any testimony that he may give cannot be used against him with respect to the underlying criminal charge because that charge has already been tried.

The defendant Duffy testified at his violation hearing; at his subsequent trial, his motion for the entry of a judgment of acquittal was granted. Thus, he was not prejudiced at either proceeding by the lack of an immunity rule and is therefore not entitled to any relief. Accordingly, his

682

appeal is denied and dismissed, and the judgment denying him postconviction relief is affirmed.

The defendant Gomes' case has previously been dismissed as moot. *State* v. *Gomes,* 117 R.I. 980, 370 A.2d 242 (1977). Accordingly, his appeal is denied and dismissed.

The cases are remitted to the Superior Court for further proceedings consistent herewith.

*Julius C. Michaelson,* Attorney General, *John R. McDermott,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Barbara Hurst, John A. MacFadyen III,* Asst. Public Defenders, for defendants.