222 A.2d 678.

ARTHUR LEPPER *vs.* HAROLD V. LANGLOIS, *Warden.*

SEPTEMBER 23, 1966.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J.   This petitioner for a writ of habeas corpus was convicted on January 14, 1928 under an indictment charging him with the murder on March 13, 1926 of one Herold Hillman.   His subsequent appeal was denied, and on March 14, 1929 he was sentenced to imprisonment for life.   He filed the instant petition on January 28, 1966, alleging therein that his detention was unlawful in that a confession was admitted into evidence at trial that had been obtained from him while he was in the custody of the police without having been advised that he had the right to assistance of counsel during such interrogation and the right to remain silent and to avoid self-incrimination.   At the time of the filing of this petition he relied on *Escobedo* v. *Illinois,* 378 U. S. 478, and *State* v. *Mendes,* 99 R. I. 606, 210 A.2d 50.

It is not disputed that petitioner, who had not been suspected of participation in the crime, left the state in April 1927, was subsequently arrested in Pennsylvania, and sentenced to serve six months for car theft in the York County Jail.   While he was confined in that institution, he talked

with the warden concerning the Hillman case, and as a result of that conversation the Cranston police inspector, James G. Miller, and an investigator with the attorney general's department, John F. DeAvilla, went to the York County Jail to further investigate the story of petitioner.

The petitioner argues, and the state does not otherwise contend, that on Friday, December 16, he was interrogated at some length in the warden's office by Miller, DeAvilla, and the warden and that late that day he signed a purported confession. On Saturday, December 17, he appeared before a district judge in Pennsylvania, stated that the confession he had signed was true, and waived extradition. On Sunday, December 18, he was interrogated at Cranston police headquarters at length, participated in an alleged re-enactment of the crime on Sunday afternoon, and was further questioned until late Sunday afternoon, when, at about 5 p.m., he was asked to sign an additional statement. This he refused to do until he could consult with a lawyer, and sometime after 5 p.m. he was allowed to consult with a lawyer and thereafter refused to sign the further statement. Nowhere in the record does it appear that petitioner at any time was informed of his right to refuse to incriminate himself or of his right to have the assistance of counsel. The record does not disclose clearly when petitioner first asked for the assistance of counsel, but it was clear that he was not allowed to consult with counsel until 5 o'clock on Sunday afternoon, after the interrogation had been completed.

While this case was pending decision, the Supreme Court of the United States decided *Miranda* v. *Arizona,* 384 U. S. 436, extending the rule laid down in *Escobedo*. That court said, in pertinent part, at page 444: "* * * the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards

effective to secure the privilege against self-incrimination. * * * Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." The petitioner primarily contends that the rule first stated in *Escobedo* and later extended in *Miranda* should be applied retrospectively to cases that became final before these decisions were made. The state argues to the contrary.

Shortly after the decision in *Miranda*, the court decided the case of *Johnson* v. *New Jersey*, 384 U. S. 719, wherein it held clearly that the rule stated in *Escobedo* and extended in *Miranda* would have no retrospective application beyond the date upon which each of those decisions became effective. The court discussed the considerations that should govern the question of whether a particular constitutional safeguard should be enforced retroactively. In support of its conclusion that the rule in *Miranda* should not be given retroactive application, the court stated several factors that justified a withholding of the retrospectivity, not the least of which is the availability of the test of voluntariness to persons convicted prior to the decisions in those cases. In short, in our opinion the court, at page 730, withheld retrospective application of the rule laid down in *Escobedo* and *Miranda* for the reason that such action "will not preclude persons whose trials have already been completed from invoking the same safeguards as part of an involuntariness claim." The court said, at page 727, referring to those cases in which it had held that constitutional safeguards would be retrospectively enforced: "In each instance we concluded that retroactive application was justified because the rule affected 'the very integrity of the fact-finding process' and averted 'the clear danger of convicting the innocent.' "

After the decision in *Johnson* v. *New Jersey*, this court took a similar stand in *State* v. *Gannites*, 101 R. I. 216, 221 A.2d 620. We there said: "For the same reasons which influenced the supreme court we refuse to give retroactive effect to either *Escobedo* or *Miranda* beyond what may be constitutionally required of us by *Johnson*." In short then the rule in this state gives only prospective application to the constitutional provisions related to the privilege against self-incrimination as construed in *Miranda* and *Escobedo*.

When it became apparent, however, that the question of retrospective application of the rule laid down in *Escobedo* and *Miranda* would be in issue in this case, we requested an eminent member of the bar of this state, Edwin H. Hastings, Esq., to act as amicus curiae and to prepare a brief sustaining the proposition that the rule laid down in *Escobedo* should be given retroactive application. The amicus prepared an able and comprehensive brief on this basic issue.

After the decision in *Johnson* amicus curiae filed a supplemental brief, presenting therein cogent arguments based upon an extremely able analysis of the *Johnson* decision. These arguments were to the effect that the rule laid down in that case was narrow in scope and proscribes retroactive application of the rule therein only to cases involving denial of the assistance of counsel and the warning of the right to remain silent.

It is our opinion that amicus curiae has correctly conceived the *Johnson* opinion as being narrow in scope, for the court therein noted that persons whose convictions antedated the decision in *Miranda* and *Escobedo* could in a proper procedure still test the voluntariness of the confession to determine whether or not it was coerced. We have already noted that in *Johnson* the court said that the proscription therein against a retroactive application of the rule laid down therein does not preclude those whose trials

have already been completed from invoking the same safeguards in support of a claim that the confession was coerced. The court there said at page 731: "We have pointed out above that past decisions treated the failure to warn accused persons of their rights, or the failure to grant them access to outside assistance, as factors tending to prove the involuntariness of the resulting confessions. See *Haynes* v. *Washington, supra; Spano* v. *New York, supra.* Prior to *Escobedo* and *Miranda,* however, we had expressly declined to condemn an entire process of in-custody interrogation solely because of such conduct by the police. See *Crooker* v. *California,* 357 U. S. 433 (1958); *Cicenia* v. *Lagay,* 357 U. S. 504 (1958)."

The issue thus suggested by amicus curiae is then whether in the totality of the circumstances surrounding the interrogation of this petitioner, his statements could be held to be coerced. We concede, as the amicus contends, that the age of the petitioner at the time, his obvious lack of knowledge concerning his right to invoke the privilege against self-incrimination or seek the assistance of counsel, and the period of time in which other interrogators left him alone with Miller, not to overlook his emotional immaturity and the effect thereon of his confinement, could in totality establish that the confession was not voluntary. However, it is clear from the record that the petitioner did approach the warden and suggest that he had been involved in the slaying of Hillman and that he voluntarily, so far as the record discloses, made the incriminating statements and signed the confession without being subjected to any overt acts of coercion. We are not persuaded in all of the circumstances that we would be warranted in finding that the statements were not voluntarily made and for that reason cannot accept the full thrust of the argument of amicus curiae on this point.

The petition for habeas corpus is denied and dismissed,

the writ heretofore issued is quashed, the records certified to us by the superior court are ordered returned to that court, and the petitioner is remanded to the custody of the respondent warden.

*Arthur Lepper* pro se, petitioner.

*J. Joseph Nugent*, Attorney General, *Corinne P. Grande*, Special Assistant Attorney General, for respondent.

*Edwin H. Hastings*, amicus curiae.