STEPHEN BROCCOLI *vs.* WILLIAM C. KINDELAN, *Warden*

JUNE 9, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

PER CURIAM. This petition for a writ of habeas corpus was brought by Stephen Broccoli, who is held in custody by the respondent warden pursuant to a sentence of seven

years imposed May 12, 1952 by the superior court in State v. Stephen Broccoli, Indictment No. 1134. Such indictment originally charged the defendant, petitioner here, with committing the crime of robbery. Later, in consideration of the attorney general's reducing the charge to larceny from the person, petitioner, who was represented by counsel, voluntarily waived trial on the reduced charge, pleaded nolo contendere thereto, and on May 14, 1948 signed a written deferred sentence agreement. That agreement reads as follows:

> "It is hereby agreed that sentence may be deferred on the within entitled indictment,—warrant,—upon payment of all costs, during the good behavior of the defendant, and so long as the Attorney General is satisfied that the defendant has broken none of the criminal laws of this State, since the date of this agreement.
>
> (signed) Francis J. Fazzano
> Ass't Attorney General.
> (signed) Stephen Broccoli
> Defendant."

Thereupon the court, on the recommendation of the attorney general, granted a deferred sentence in accordance with the established practice.

Subsequently, while the deferred sentence agrement was in effect, petitioner became involved in a police investigation resulting in another complaint charging that on a certain date he did interfere with, hinder and obstruct a Rhode Island state police officer. After arraignment thereon in the eighth district court he was brought on a capias to the superior court where the attorney general, on the ground that petitioner had breached his agreement, moved for sentence on the original indictment as reduced. After a partial hearing the court postponed final action until all pertinent facts were available, including the determination by the district court of petitioner's motion to quash the new complaint. The petitioner was notified by the superior court, however, that while the disposition of the new complaint

would be another fact for consideration it would not necessarily be controlling.

After such complaint was quashed as to petitioner, he was again brought before the superior court and a further hearing was held on the question of his deferred sentence. In that court he admittedly was given full opportunity to be heard both through the testimony of himself and his companions and by arguments of counsel. The court, after considering all the facts, circumstances and arguments, concluded that petitioner had in fact violated the terms of the deferred sentence agreement and imposed a sentence of seven years on the original indictment as reduced.

The instant petition includes certain allegations that petioner was denied due process or certain fundamental rights under the United States constitution. However, no serious argument has been made thereon, evidently because the following facts are undisputed: That at the time of his arraignment on the original indictment, and at all times thereafter, he had the benefit of able counsel, who were experienced in criminal law and procedures; that according to petitioner's record he had been before the court previously on several occasions and was therefore acquainted with the practice as to a deferred sentence; that having induced the attorney general to reduce the charge from robbery to that of larceny from the person which carried a considerably lesser penalty, he thereupon in open court expressly, voluntarily and understandingly waived trial upon the reduced charge, pleaded nolo contendere thereto, and signed the above-quoted deferred sentence agreement with the attorney general.

In such circumstances, even if his counsel had so argued, it is obvious that petitioner was not deprived of due process or of any fundamental right under the United States constitution. Basically the gist of the argument for petitioner here involves questions determinable entirely under our state practice in criminal matters and the facts of record or within the court's judicial knowledge.

It is not contended that the superior court was without power to fix any number of conditions when granting a deferred sentence. But it is argued that the court, by accepting the recommendation of the attorney general without specifically imposing other or additional conditions, was bound by petitioner's agreement with him; that such agreement precludes the right of the court to later impose sentence thereon unless and until petitioner is found to have personally violated some particular criminal law; that there was evidence of mere association with other persons who had criminal records but none of any personal violation of law; and that the action of the court was therefore illegal and arbitrary.

Assuming without deciding that the superior court was limited by the conditions of the deferred sentence agreement, petitioner's arguments involve at least a twofold fallacy. First, as a basic premise he assumes an interpretation of the agreement which contradicts its express terms, ignores its purpose, and is inconsistent with the long-established and well-known practice in such matters in this state; and secondly, from such erroneous assumption he then argues that there was no evidence to justify the court's conclusion that petitioner had not in good faith lived up to all the conditions upon which he induced the attorney general to recommend and the court to defer sentence on said indictment.

The deferred sentence agreement, as its terms clearly show, contains three express conditions and not one as apparently urged by petitioner. The first as to costs is not important here. The second condition, which required continuing good behavior on his part, and the third, which related to his nonviolation of the criminal laws, are broad, express and unambiguous. They leave no room for the construction assumed by petitioner which would require that before the attorney general could question the conduct of a defendant who was under a deferred sentence and before the court could impose sentence thereunder, it must affirma-

tively appear that he had personally violated some criminal law. In our opinion that interpretation would not only contradict the express language of such conditional agreement but also would defeat its clear purpose and the policy which the statute on deferred sentences was designed to serve.

In this jurisdiction the unquestioned practice of granting conditional liberty on a deferred sentence is well known to lawyers and to defendants who, like petitioner, have been previously involved in criminal charges. The correct view of such practice is expressed and ratified in *Clark* v. *Orabona,* 59 F. 2d 187. That case involved a deportation proceeding in the federal court and depended on the sentence imposed by the superior court of this state for defendant's breach of a deferred sentence agreement like the one in question here. It appears that in the superior court the defendant had first received a deferred sentence on a criminal charge. Later while under such deferred sentence he was again indicted on two other charges and was tried on only one of them. Notwithstanding his acquittal at the trial on that charge—the second one remaining pending—the trial justice of the superior court was satisfied on the facts that defendant had breached the conditions of his original deferred sentence agreement, and accordingly sentence was imposed.

In other words the trial justice considered that the provision for continued good behavior was a separate condition of the deferred sentence agreement, and that it was not necessary thereunder to show a personal violation of a criminal law to warrant action by the court in imposing a sentence. In the federal court that interpretation of the deferred sentence agreement was expressly adopted and ratified, thus approving the sentence imposed. In the instant case a similar interpretation of the deferred sentence agreement was followed by the attorney general and the trial justice. We agree with such construction, which is consistent with the policy of the statute and the long-

established and unquestioned practice in criminal matters in this state.

The only remaining question is whether the trial justice acted arbitrarily or whether there was a reasonable ground in his consideration of the facts to justify the imposition of sentence. In this connection it appears from the petition and the record of proceedings that a state trooper in a routine check on Hartford avenue halted a Cadillac car which was occupied by the driver Matteo Querico, the petitioner Broccoli, and Emilio Della Grotta. The car was not registered in the name of any of the occupants.

The trooper, recognizing Broccoli and believing that further questioning was desirable, directed the occupants to proceed ahead of him to the police barracks which was further west on Hartford avenue. At the same time the trooper notified such headquarters. However, at a point in the town of Scituate just before reaching the barracks the Cadillac was suddenly accelerated and driven at an estimated speed of 70 to 100 miles per hour on a main public highway, despite shots fired by the pursuing trooper. Other troopers, who had been notified, failed to halt the fleeing automobile, even though they also fired shots. The trooper's car was clearly outdistanced and there is evidence that a road block in a town in Connecticut was required to halt the Cadillac and return the occupants to this state.

It further appears that the car was registered in the name of Thomas Peter Delebia of Worcester, Massachusetts, who was unemployed, had some minor record, and apparently had changed the color of the paint on the car from gray to black. The driver Matteo Querico, at the time of the occurrence under consideration, had an extensive criminal record in Massachusetts and Rhode Island and had previously been involved with petitioner when the latter was driving a stolen car and similarly fled from the police. On that occasion possession of concealed firearms was involved. Della Grotta, the other occupant, also had a substantial

criminal record and was known to petitioner to be on conditional liberty under a deferred sentence.

The petitioner's record, which was before the court, covers the period from 1935 to 1952 and includes convictions or sentences for possession of lottery tickets; playing dice on Sunday; robbery in Rhode Island; robbery in Worcester, Massachusetts; armed robbery in Rhode Island reduced to larceny from the person (eleven charges, sentence deferred on one); and accessory to driving off an automobile and carrying a concealed weapon. The parole and probation counsellors' report showed that before the Cadillac incident petitioner had been given "strong instructions regarding his behavior in the future, which included the warning not to associate with known questionable characters."

Nothing appears in the record to show any necessity or convincing reason that would cause petitioner to deliberately plan with the driver, as he did, to go to New York in the Cadillac or to associate himself at that time, place and in the circumstances with the two other known criminals. Even if travel to that city had been a legitimate objective the journey in that car was in no wise connected with his work and was not necessary since other transportation by train or bus was available. In the present incident the flight into Connecticut was effected with great danger to the lives of the occupants as well as to other persons.

The trial justice stated that he would be very "naive" to believe that the speeding of the car away from police into the state of Connecticut, in violation of the trooper's command, was in no way influenced by the petitioner and his companion Della Grotta. He felt that if there were no firearms, contraband, or other evidence of crime to be disposed of, and no violation of law involved in their association and possession of the car in the existing circumstances, there was no convincing reason in the record to explain why the car should have been suddenly speeded up. In the prevailing conditions, which admittedly involved violation of law and endangered the lives of persons on the highway, the action

was consistent with participation or at least guilty knowledge.

Moreover, apart from petitioner's participation in such violation the trial justice evidently concluded also that he had not in good faith lived up to the condition requiring continued good behavior. That provision is insisted upon to prevent the return of the guilty person to the environment and associations which have been found to contribute greatly to breaches of the criminal law. While the agreement is in effect he is expected to avoid places which are known to be frequented by persons with criminal records and to refrain from unnecessary and deliberate associations with such persons if he would in good faith live up to his agreement and help in his own rehabilitation. That is why the requirement for continued good behavior is made an express condition of the deferred sentence agreement, and petitioner was specifically instructed accordingly.

The trial justice gave petitioner and his counsel full opportunity at the several hearings to explain the facts which were presented or made known to him. Acting independently he considered all the evidence and did not delegate his power in the matter to the attorney general as urged by petitioner. Unless he acted arbitrarily, his findings on the facts will not be set aside by this court. From a review of the petition, record and arguments of counsel for petitioner and his companion Della Grotta, we are convinced that the trial justice correctly interpreted the deferred sentence agreement; that the facts before him gave reasonable and probable cause to believe that petitioner, by deliberate and unnecessary association in the circumstances with the two companions having known criminal records, participated in a violation of law; that in any event he had not in good faith lived up to all the conditions of his deferred sentence including continued good behavior; and that the trial justice properly imposed the sentence which petitioner originally had induced him to defer by voluntarily and

understandingly waiving trial, by pleading nolo contendere to the reduced charge, and by signing the deferred sentence agreement.

The petition is denied.

*John H. DiStefano,* for petitioner.