291 A.2d 625.

ROBERT W. FLINT, JR. *vs.* FRANCIS A. HOWARD, *Warden.*

JUNE 13, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Powers, J. This is a petition for a writ of habeas corpus which we agreed to hear on oral arguments and briefs because it raises a question not previously considered by this court.

On March 13, 1964, Robert W. Flint, Jr., hereinafter called petitioner, pleaded guilty to three indictments charg-

ing him with robbery. He was sentenced to six years on each of two such indictments with the sentences to run concurrently. As to the third indictment, petitioner entered into a deferred sentence agreement as authorized by then G. L. 1956, §12-19-19.[1]

Also in accordance with said section the period of probation provided for in the deferred sentence agreement would run for five years from the date of his release from the incarceration resulting from the six-year concurrent sentences. See Almeida v. Langlois, 97 R. I. 325, 197 A.2d 498 (1964) and Giroux v. Superior Court, 86 R. I. 48, 133 A.2d 636 (1957). Accordingly, when petitioner was paroled in connection with the concurrent six-year sentence in October of 1967, his period of probation had five years to run.

Thereafter in July of 1969, petitioner and his brother were arrested and charged with robbery of the Elmwood Avenue branch of the Old Stone bank. They were jointly indicted and on November 12, 1969, petitioner was arraigned and pleaded not guilty. At that time, as well as on December 6, 1969 and January 26, 1970, he moved for a speedy trial on the 1969 indictment.[2]

The record establishes that when petitioner was arraigned on November 12, 1969, to answer to the indictment charging him with robbery, an assistant attorney general, pointing out that petitioner was on a deferred sentence, moved that he be held without bail as a deferred sentence violator,

---

[1]The substance of this section remains unchanged but is now cited as G. L. 1956 (1969 Reenactment) §12-19-19.

[2]Trial was not held until December 7, 1970, some 13 months after petitioner's first demand for a speedy trial. Claiming this lapse of time to have constituted denial of a speedy trial, petitioner included such allegation in the instant petition.

However, he was acquitted at trial some four months prior to the filing of the instant petition, namely April 13, 1971.

In such circumstance, the speedy trial issue is moot and requires no further consideration.

pending receipt of a pre-sentence report and a hearing on the alleged violation.

The petitioner objected to being presented as a deferred sentence violator, claiming then, as he alleged in the instant petition, that he was entitled to be tried on the latest indictment to which he had just pleaded not guilty before the state could use that charge as a basis for presenting him as being in violation of the 1964 deferred sentence agreement.

The Superior Court justice, however, granted the state's motion and ordered petitioner held without bail pending a violation hearing which said justice assigned to December 10, 1969.

Seeking to vacate the December 10, 1969 assignment, petitioner, on December 1, 1969, filed a motion in this court for leave to file a writ of prohibition. We directed the Attorney General to show cause, if any he had, why the motion should not be granted. Thereafter, on consideration of petitioner's motion, his proposed petition for the writ, and the Attorney General's answer, we denied petitioner's motion on December 12, 1969. *Flint* v. *State,* 106 R. I. 823, 259 A.2d 416 (1969).

Meanwhile, petitioner appeared in the Superior Court on December 10, 1969, as scheduled. At that time, the Superior Court was advised of petitioner's motion pending in this court and the revocation hearing was reassigned to January 14, 1970.

On this latter date, petitioner, accompanied by court appointed counsel appeared as scheduled in the Superior Court. Present at that time also were a number of witnesses whom the state was prepared to present in connection with the Attorney General's presentment of petitioner as a deferred sentence violator.

The petitioner personally, as well as through his attorney,

again protested the holding of a revocation hearing before trying petitioner on the 1969 indictment.[3]

However, petitioner's motion to defer the revocation hearing until after trial on the 1969 indictment was again denied and the Attorney General called five witnesses in support of the state's allegation that petitioner was in violation of his 1964 deferred sentence agreement.

During the course of this hearing it was made known to the court by petitioner and his counsel that they were at odds as to how petitioner's interests could best be served. Counsel requested that he be permitted to withdraw from the case. This request was denied by the court but the hearing was continued for two days to January 16, 1970, and on that date again continued to January 20, 1970. On the latter date, following further discussions among the Superior Court justice, counsel for the petitioner, and petitioner, counsel was permitted to withdraw and new counsel was appointed. The hearing was then further continued and resumed on February 25, 1970.[4]

When the witnesses were produced by the state at the commencement of the revocation hearing on January 14,

[3]The transcript of the January 14, 1970 hearing establishes that after this court had denied petitioner's motion for leave to file a writ of prohibition, petitioner had made application to the United States Court of Appeals, First Circuit, seeking a writ of prohibition from that court. The record also establishes that the application was denied on January 8, 1970, in a per curiam order of that date under Miscellaneous No. 361, Robert W. Flint, Jr., petitioner v. The State of Rhode Island et al., respondents.

[4]Meanwhile, on January 6, 1970, petitioner's brother filed a motion for severance. This motion was granted on January 20, 1970. Thereafter, the brother changed his plea from not guilty to guilty, and on August 26, 1970, was sentenced to serve five years at the Adult Correctional Institutions. Later, when petitioner was tried on the same indictment, in December of 1970, the brother testified that at the time he robbed the Elmwood Avenue Old Stone bank, petitioner, although driving the car used in the robbery, was unaware of his brother's criminal conduct.

as aforesaid, cross-examination was conducted both by petitioner and his then counsel. The former cross-examined each of the five witnesses at length, but counsel restricted his cross-examination to the police officers. Apparently, this was either the result of or a factor contributing to petitioner's dissatisfaction with his then counsel.

In any event, when the revocation hearing was resumed on February 25, 1970, at which petitioner was represented by newly appointed counsel, all five witnesses were recalled by the state for full examination by petitioner's counsel.

It will be helpful at this juncture to identify the witnesses in question and to summarize their testimony. The first such witness was a teller at the Elmwood Avenue branch of the Old Stone bank who related how on July 16, 1969, a man approached her cage and gave her a note. It stated that he had a gun and it directed her to give him all of the bills of large denomination in her drawer. She handed him $1,190 which the bank could identify by serial number.

On turning over the money, however, she touched off an alarm which rang at police headquarters. Moreover, she pointed to petitioner's brother who was in the court room as the man who made the demand and to whom she handed the bills.

The second witness was the assistant manager of the bank. He related how the teller told him of what had happened and pointed out the man as he was leaving the bank. The assistant manager followed the man out of the bank and up the street to where a car was waiting with a driver at the wheel. He could not identify the driver but he did get the make, color and registration of the automobile, information which he gave to the police within five minutes of the robbery.

The third witness was a Providence police sergeant who,

while cruising in a police car, heard the radio broadcast giving a description of the car and its two occupants.

Within a few minutes of hearing this alarm, the sergeant spotted the car, caused it to stop and placed the two men under arrest. He identified these men as being petitioner and petitioner's brother.

The fourth witness was the sergeant's precinct commander. He testified as to hearing the sergeant's broadcast that he was in close pursuit on Broad Street in the vicinity of the bank. He further testified that following the sergeant's indicated area of pursuit, he came upon the scene of arrest. Getting out of his car, the commander approached the pursued vehicle and observed what appeared to be a gun sticking out under the front seat. On reaching in to take what turned out to be a plastic toy replica of an automatic, he discovered a paper bag with a large quantity of paper currency.

The final witness for the state was the Providence captain for detectives. He also went to the scene of the arrest but the significant testimony that he gave was to relate how the money taken from the car in question was identified, to the dollar, as that which had been taken from the bank.

Extensive cross-examination of these witnesses by petitioner and both of the attorneys who represented him did nothing to cast so much as a suggestion of doubt on a chain of circumstances which, if believed, placed petitioner in a precarious position. Notwithstanding this, petitioner elected to offer no exculpatory explanation. Rather, when extensive cross-examination of all witnesses produced by the state was completed, petitioner's counsel informed the court that petitioner, by his choice, would forego offering testimony in favor of arguing several motions, each of which, in effect,

challenged the court's jurisdiction to sentence petitioner as being in violation of his deferred sentence agreement.[5]

The Superior Court justice found no merit in any of petitioner's contentions regarding the challenge to the court's standing to conduct a violation hearing, and, relying on the state's uncontradicted evidence, sentenced petitioner to 12 years.[6]

Thereafter, on April 13, 1971, some 14 months after having been violated as aforesaid, petitioner filed the instant petition with this court.

As noted early on, we ordered the writ to issue for hearing on oral arguments and briefs in order to consider an allegation of first impression with this court.[7]

The specific question raised by petitioner's reviewable allegation is as follows:

Does constitutional due process require that a deferred sentence probationer indicted for an offense allegedly com-

---

[5]One such motion was predicated on the proposition that there could be no revocation hearing on an alleged violation of the deferred sentence agreement because that agreement was made in connection with a plea of guilty, the voluntariness of which was, on February 26, 1970, being reviewed by this court in post-conviction proceedings.

The petition for habeas corpus seeking to set aside the guilty plea of March 13, 1964, had been filed in this court prior to February 26, 1970, but the writ did not issue until March 24, 1970. *Flint* v. *Sharkey*, 106 R. I. 841, 263 A.2d 701 (1970).

Parenthetically, after hearing on oral arguments and briefs pursuant to said order, this court denied the petition, finding no merit in petitioner's contention that his guilty plea had not been voluntarily and intelligently made. *Flint* v. *Sharkey*, 107 R. I. 530, 268 A.2d 714 (1970).

[6]It should be noted that the indictment on which petitioner was sentenced was also for robbery for which there is a maximum penalty of life imprisonment. General Laws 1956 (1969 Reenactment) §11-39-1.

[7]We note parenthetically that petitioner did not confine his allegations of unlawful restraint to the one question which motivated us in ordering the writ to issue. See for example footnote 2.

However, all such other allegations had been considered and rejected by this court in prior decisions. Hence, they played no part in our decision to hear the instant petition on oral arguments and briefs.

mitted while on probation, must be tried on that indictment before the circumstances of his alleged involvement in the offense charged may be shown to support a finding that said probationer is in violation of his deferred sentence agreement?

In *Escoe* v. *Zerbst*, 295 U.S. 490, 55 S. Ct. 818, 79 L.Ed. 1566 (1935), the United States Supreme Court flatly rejected the proposition that revocation of probation proceedings are subject to constitutional safeguards.[8] The Court made it clear that probation is a species of grace whereby a convicted accused is permitted to remain at liberty rather than suffer the incarceration which the justice presiding might have ordered. With this as its premise, the Court went on to say, in substance, that such act of grace was a matter of discretion and not one of right. Consequently, a probationer's conditional liberty could be terminated if the grace extended by the Court were shown to have been abused.

However, such termination, the Court emphasized, could not be arbitrary or capricious. Revocation of probation then, the Court continued, requires that a probationer, accused of violating the conditions upon which the gift of grace was made, must be afforded an opportunity to be heard on such accusations of noncompliance with the terms of his probation. Specifically, the late Mr. Justice Cardozo, speaking for the Court, summarized as follows:

> "Clearly the end and aim of an appearance before the court must be to enable an accused probationer to explain away the accusation. The charge against him may have been inspired by rumor or mistake

---

[8]This court has cited and followed *Escoe* v. *Zerbst*, 295 U. S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935) in at least the following cases: *Tillinghast* v. *Howard*, 109 R. I. 497, 287 A.2d 749 (1972); *Charest* v. *Howard*, 109 R. I. 360, 285 A.2d 381 (1972); *O'Neill* v. *Sharkey*, 107 R. I. 524, 268 A.2d 720 (1970); *Walker* v. *Langlois*, 104 R. I. 274, 243 A.2d 733 (1968) and *Harris* v. *Langlois*, 98 R. I. 387, 202 A.2d 288 (1964).

or even downright malice. He shall have a chance to say his say before the word of his pursuers is received to his undoing. This does not mean that he may insist upon a trial in any strict or formal sense. *Burns* v. *United States, supra,* at pp. 222, 223. It does mean that there shall be an inquiry so fitted in its range to the needs of the occasion as to justify the conclusion that discretion has not been abused by the failure of the inquisitor to carry the probe deeper." *Id.* at 493, 55 S.Ct. at 820, 79 L.Ed. at 1569.

The instant petitioner does not seriously contend that there has been any pronouncement by the United States Supreme Court or any Appellate Court, state or federal, which alters the thrust of *Escoe* v. *Zerbst, supra,* as the same is applicable to revocation hearings per se. What he does argue, and rigorously, is that in *Mempa* v. *Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), the United States Supreme Court implicitly overruled *Escoe* on the question of constitutional due process when a revocation hearing was concerned with whether a deferred sentence probationer was in violation of the terms of a deferred sentence.

*Mempa,* dealt with the implications of the State of Washington's system of deferring sentence, subject to probation, which, in substantial manner, is comparable to the provisions of our own §12-19-19.

On June 17, 1959, Mempa pleaded guilty and the imposition of sentence was deferred on condition that he comply with the terms of a two-year period of probation. Four months later, he was presented to the court for having allegedly been involved in a burglary during his probation. When so presented, Mempa admitted such involvement, and being found to have violated the condition on which sentence had been deferred, was sentenced to a term of ten years on his June 17, 1959 plea of guilty.

However, he was not represented by counsel when sen-

tenced. Thereafter, the United States Supreme Court agreed to hear Mempa's claim that since sentencing is a critical stage in criminal proceedings, the sentencing of Mempa, absent representation by counsel, constituted a denial of due process within the meaning of the fourteenth amendment to the United States Constitution. The Court found merit to Mempa's contention and did not so much as refer to *Escoe* v. *Zerbst, supra.*

Given the broadest possible interpretation, it is petitioner's contention here that the thrust of the *Mempa* decision is that a hearing to determine whether a probationer is in violation of his deferred sentence agreement is a criminal proceeding, hence subject to applicable constitutional due process. Taking this to be so, petitioner then argues that the imposition of the 12 year sentence was in violation of his fifth amendment right against self-incrimination, in that it was based on evidence of petitioner's involvement in an offense for which, although indicted, he had not been tried.

The reasoning behind this argument is that to take advantage of his right to explain away the state's evidence adduced at the deferred sentence violation hearing would have required petitioner to reveal the defense that he planned to offer when tried on the indictment.

This argument is predicated on the proposition that the state would set out to minimize petitioner's exculpatory explanation if made aware of it prior to trial on the indictment. In short, petitioner urges the protection against self-incrimination guaranteed by the fifth amendment embraces those situations which call for a decision as to the advisability of invoking the fifth amendment.

It is suggested that such proposition finds support in *Simmons* v. *United States,* 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed.2d 1247 (1968). There the Court held that testimony offered by an accused at a hearing on a motion to

suppress evidence could not thereafter be offered against such accused at trial, his motion to suppress having been denied. So holding, the Court stated, "* * * we find it intolerable that one constitutional right should have to be surrendered in order to assert another." *Id.* at 394, 88 S. Ct. at 976, 19 L. Ed.2d at 1259.

Later, however, in *McGautha* v. *California,* 402 U.S. 183, 91 S. Ct. 1454, 28 L. Ed.2d 711 (1971) passing on *Crampton* v. *Ohio,* which had been consolidated with *McGautha,* the Court expressly held that the protection afforded in *Simmons* was limited to a situation where the accused without such protection would. be required to waive one constitutional guarantee in order to invoke another. The due process concept of *Simmons,* the Court emphasized, was not accorded by the Constitution merely because in deciding whether to invoke fifth amendment protection an accused was confronted with a difficult decision.

Crampton was tried to a jury for murder in the first degree under an Ohio statute which called for the death sentence on conviction unless the jury which tried the case recommended life imprisonment. He did not testify at his trial and was convicted. The jury made no recommendation of leniency.

Crampton argued to the United States Supreme Court that the Ohio statute denied him due process in that if he elected not to testify in his defense, he lost the opportunity to be heard on the question of leniency.

In rejecting Crampton's contention that the Ohio procedure was violative of due process under the fourteenth amendment, the Court stated at 213, 91 S. Ct. at 1470, 28 L. Ed.2d at 729:

> "The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow. *McMann* v. *Richardson,* 397 U.S., at 769. Although a defendant may have a right, even of con-

stitutional dimensions, to follow whichever course he chooses, the Constitution does not by that, token always forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved."

We are at a loss to comprehend how the instant petitioner, electing to pursue his right at the deferred sentence violation hearing to explain away the circumstantial evidence, offered by the state, could appreciably impair his right to a fair trial on the indictment, even if *Mempa* v. *Rhay, supra,* required that deferred sentence violation hearings conformed generally to constitutional due process.

But, contrary to petitioner's reading of *Mempa* v. *Rhay, supra,* we do not agree that the thrust of *Mempa* is to equate deferred sentence violation hearings with criminal proceedings in which an accused is entitled to constitutional due process in all its parts. That this is so, is readily apparent from the following:

"In sum, we do not question the authority of the State of Washington to provide for a deferred sentencing procedure coupled with its probation provisions. Indeed, it appears to be an enlightened step forward. All we decide here is that a lawyer must be afforded at this proceeding whether it be labeled a revocation of probation or a deferred sentencing." *Mempa* v. *Rhay,*[9] 389 U.S. at 137, 88 S.Ct. at 258, 19 L. Ed.2d at 342.

In light of all that has been said heretofore we find no merit to petitioner's contention that he was entitled to be tried on the indictment charging complicity in the Elmwood Avenue branch robbery before the circumstances which led to that indictment could be shown at his deferred sentence violation hearing. *United States* v. *Chambers,* 429 F.2d 410 (3rd Cir. 1970); *Jianole* v. *United States,*

[9]*See O'Neill* v. *Sharkey,* 107 R. I. 524, 268 A.2d 720 (1970) and *State* v. *Plante,* 109 R. I. 371, 285 A.2d 395 (1972), both of which were decided in light of *Mempa* v. *Rhay,* 389 U. S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).

58 F.2d 115 (8th Cir. 1932); *State* v. *Greer,* 173 N.C. 759, 92 S.E. 147 (1917). Since he was fully represented thereat by counsel, petitioner's violation hearing is not otherwise distinguishable from a probation revocation hearing. *See Tillinghast* v. *Howard,* 109 R. I. 497, 287 A.2d 749 (1972).

This is so notwithstanding the fact that when brought to trial on the Elmwood Avenue branch indictment, petitioner was acquitted. He makes much of this fact, arguing inferentially that if he had been tried on the indictment first, his acquittal would be an effective bar to finding him in violation of his deferred sentence agreement.

That such would be the case, however, is simply not supported by any case cited by petitioner, nor discovered by our considerable independent research. And this is not because the question has remained at large.

In *Scott* v. *State,* 238 Md. 265, 208 A.2d 575 (1965), probationer was charged with assault with intent to rape, and common assault allegedly committed while on probation. He was tried on these charges and acquitted when hearsay evidence proffered by the state was withheld from the jury. Even so, the justice who presided at his trial thereafter revoked Scott's probation on the ground that he found the hearsay evidence to be credible and persuasive of guilt. The order of revocation was affirmed. *See also Marshall* v. *Commonwealth,* 202 Va. 217, 116 S.E.2d 270 (1960).

We need only look to decisions of this court to find approval for the principle on which the cited cases were decided. Specifically, in *Walker* v. *Langlois,* 104 R. I. 274, 243 A.2d 733 (1968) and *Harris* v. *Langlois,* 98 R. I. 387, 202 A.2d 288 (1964), we held that the decision of a revoking justice, unlike a jury verdict, can be supported by hearsay evidence.

Again in *Charest* v. *Howard,* 109 R. I. 360, 285 A.2d

381 (1972) and *Broccoli* v. *Kindelan,* 80 R. I. 436, 98 A.2d 67 (1952), we held that whereas a jury must be convinced beyond a reasonable doubt in order to convict, the decision of a revoking justice is reversible only if such decision is arbitrary or capricious.

The petition for habeas corpus is denied and dismissed, and the writ heretofore issued is quashed.

*William F. Reilly,* Public Defender, *Ralph J. Gonnella,* Supervising Attorney, Inmate Legal Assistance Program, for petitioner.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for respondent.