315 A.2d 53.

STATE *vs.* MARTIN N. BETTENCOURT & HENRI I. LEMOI.

FEBRUARY 15, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. On July 28, 1972, a trial justice in the Superior Court found that Martin N. Bettencourt and Henri I. Lemoi had violated the terms of deferred sentences imposed upon them in 1970 following their pleas of nolo contendere to separate charges of breaking and entering a building in the nighttime with intent to commit larceny. Each defendant is now here on an appeal[1] and claims that the trial justice erred in finding a violation.

At the violation hearing it appeared that at about 10:30 p.m. on July 8, 1972, defendants, while at a drinking establishment in West Warwick, met a young lady (hereinafter A.L.) and offered her a ride home. En route they left the main highway, drove along a dirt road and stopped their

---

[1] We consider these cases as being here on appeals inasmuch as each defendant's bill of exceptions was filed shortly after the effective date of Rule 4(b) of our rules which changed the procedures for obtaining review of criminal cases in this court.

vehicle. Each defendant then had sexual relations with A.L.

While defendants admitted to those relations, they testified that A.L. was a willing participant and they denied the use of force. Her testimony, on the other hand, was that the acts complained of were done forcibly and against her will.

In any event, A.L. reported the incidents to the police the next night, and on July 11, capiases were issued for the apprehension of both defendants. They were subsequently taken into custody, and at the conclusion of the violation hearings the trial justice opined that both defendants were "liars" and that "the complaining witness told it as it was." Accordingly, he found that a clear case of rape had been established against each defendant and that each had therefore violated his deferred sentence agreement. Following receipt of presentence reports, he imposed sentences of three years on each defendant.

While nothing in the records certified to us so discloses, defendants assure us — and the state acquiesces — that they were thereafter each indicted for rape, and that prior to trial A.L. recanted the testimony she had given at the violation hearing whereupon the state's motions to dismiss the rape indictments were granted.

Before us defendants did not argue that they were denied any of the due process rights mandated in *Morrissey* v. *Brewer*, 408 U. S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972),[2] for the protection of an individual whose

---

[2]The Supreme Court decided that a parolee, while not entitled to the full panoply of ciminal due process rights at a parole revocation hearing, is entitled to the following:

"* * * (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a tra-

liberty under a probation or deferred sentence agreement has been conditioned on his observance of certain stated restrictions. Moreover, they concede in their brief that they received notice that the violation charged was the alleged rape, and that they were given "notice, an opportunity to refute and explain, an open hearing, and representation * * *."

In addition, defendants conceded during oral argument that the evidence at the revocation hearing was such as to reasonably satisfy the trial justice that they had committed the violations charged, and they also agreed that this court would be justified in concluding that the trial justice did not act arbitrarily or capriciously in so finding. These concessions would, of course, justify an affirmance under the principles which now control in matters of this kind.[3]

Nonetheless defendants, relying solely on a dissenting opinion of a single justice in *Kelly* v. *State*, 483 S.W.2d 467 (Tex. Crim. App. 1972), contend that the "reasonably satisfactory" standard of proof which now obtains at violation hearings should be replaced by the criminal standard

---

ditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey* v. *Brewer*, 408 U. S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484, 499 (1972).

A probationer is entitled to the same constitutional protections at a revocation hearing as is a parolee, *Gagnon* v. *Scarpelli,* 411 U. S. 778, 782, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656, 662 (1973), and for our purposes there is no distinction between a violation of probation, on the one hand, and of a deferred sentence agreement, on the other. *State* v. *Plante,* 109 R. I. 371, 377-78, 285 A.2d 395, 398 (1972).

[3]*Andrews* v. *Howard,* 111 R. I. 727, 306 A.2d 835 (1973); *Flint* v. *Howard,* 110 R. I. 223, 291 A.2d 625 (1972); *Tillinghast* v. *Howard,* 109 R. I. 497, 502, 287 A.2d 749, 752 (1972); *Charest* v. *Howard,* 109 R. I. 360, 366, 285 A.2d 381, 384 (1972); *State* v. *Plante,* 109 R. I. 371, 378, 285 A.2d 395, 399 (1972); *Walker* v. *Langlois,* 104 R. I. 274, 282-83, 213 A.2d 733, 737-38 (1968); *Broccoli* v. *Kindelan,* 80 R. I. 436, 443, 98 A.2d 67, 71 (1952).

requiring proof beyond a reasonable doubt. But a revocation hearing, although it may result in the loss of liberty and is therefore subject to certain constitutional safeguards, note 2 *supra,* cannot be equated with a "criminal prosecution in any sense." *Morrissey* v. *Brewer, supra* at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499; *see also Gagnon* v. *Scarpelli,* 411 U. S. 778, 782, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656, 662 (1973).

Instead, it is an informal 'proceeding at which technical rules of evidence do not apply. Its sole concern is whether or not a convicted criminal has breached a condition of the probationary or deferred sentence which he received in the hopeful expectation that he would use his freedom to rehabilitate himself.

Because of these basic differences between the two proceedings, we can perceive no sound reason why we should depart from the rule which has deep roots here as well as elsewhere and which requires that proof of a breach of one of the stipulated restrictions be established by reasonably satisfactory evidence rather than beyond a reasonable doubt. Note 3 *supra; see also United States* v. *Chambers,* 429 F.2d 410 (3d Cir. 1970); *United States* v. *Lauchli,* 427 F.2d 258 (7th Cir. 1970); *Davis* v. *State,* 256 Ind. 58, 267 N.E.2d 63 (1971); *Rites* v. *State,* 15 Md. App. 346, 290 A.2d 554 (1972); *Commonwealth* v. *Kates,* 452 Pa. 102, 305 A.2d 701 (1973); *State* v. *Kuhn,* 81 Wash.2d 648, 503 P.2d 1061 (1972).[4]

The defendants also strongly urge, as we understand them, that fundamental fair play and justice demand that

---

[4]See, however, American Bar Association Project on Standards for Criminal Justice, *Standards Relating to Probation* at 67 (approved draft, 1970), which recommends that "the government should have the burden of establishing the occurrence of the violation by a *preponderance of the evidence* in those cases where the facts are 'contested." (emphasis added). *Accord, People* v. *Smith,* 105 Ill. App.2d 14, 245 N.E.2d 13 (1969).

they not be required to continue to serve solely on the basis of testimony which the prosecutrix has since recanted. At oral argument we suggested from the bench that perhaps an application to the Superior Court for a writ of error *coram nobis* might have been a more appropriate procedure for seeking relief from their plight. They might thereby have sought recall of the revocation of their deferred sentences for alleged errors of fact the existence of which, through no fault of theirs, was unknown to them at the time of the hearing and which, if known to the Superior Court, might have dictated a contrary result, *Andrews* v. *Langlois,* 96 R. I. 461, 463, 194 A.2d 674, 675 (1963).

Be that as it may, they persisted in their appeal, and they now ask us to reconsider *Flint* v. *Howard,* 110 R. I. 223, 291 A.2d 625 (1972). In that case the revocation was based upon the commission of a new crime for which the petitioner was later tried and acquitted. Using basically the same fairness and justice arguments as do these defendants, the petitioner contended that his revocation hearing should have been stayed pending the trial of the criminal case.[5]

We rejected those arguments relying at least in part on our understanding that the Supreme Court in *Escoe* v. *Zerbst,* 295 U. S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), had "flatly rejected the proposition that revocation of pro-

---

[5]Following our opinion in *Flint* v. *Howard,* 110 R. I. 223, 291 A.2d 625 (1972), the petitioner sought habeas corpus in the United States District Court for the District of Rhode Island pursuant to 28 U.S.C. §2254 (1970), and that court held that he had been denied due process at the Superior Court violation hearing "* * * insofar as he was not provided with use immunity for statements he might have made in his defense." *Flint* v. *Mullen,* No. 5251 (D.R.I. Dec. 26, 1973). The state's appeal from that decision is now pending before the United States Court of Appeals for the First Circuit.

bation proceedings are subject to constitutional safeguards." *Flint* v. *Howard, supra* at 231, 291 A.2d at 629.

[3]    While the *Morrissey* case certainly narrows the sweep of that statement, nothing there even intimates that the constitution requires a conviction on a criminal charge before the state can use the conduct upon which that charge is predicated as the basis for revoking a malefactor's probation or deferred sentence agreement. *See, e.g., United States* v. *Ambrose,* 483 F.2d 742, 753-54 (6th Cir. 1973); *United States* v. *Chambers, supra; People* v. *Smith,* 105 Ill. App.2d 14, 245 N.E.2d 13 (1969); *Commonwealth* v. *Kates, supra.*[6]

Whether public policy considerations, as distinguished from constitutional dictates, indicate a preference for a rule which would have assisted the petitioner in *Flint* and would help these defendants is a totally different question which, at least in the first instance, should be for the Legislature. Accordingly, we abstain in order to afford it an opportunity to decide whether to proceed further in an area which it has already entered.[7]

For the reasons indicated, and without either prejudice to or indication of our view on their right to institute

---

[6]The authors of *Standards Relating to Probation,* note 4 *supra,* take a different approach. They suggest that the kinds of "sensitive and difficult problems" as are found in the *Flint* case and in the instant cases "can be minimized" by a rule which provides that:

"A revocation proceeding based solely upon commission of another crime ordinarily should not be initiated prior to the disposition of that charge. However, upon a showing of probable cause that another crime has been committed by the probationer, the probation court should have discretionary authority to detain the probationer without bail pending a determination of the new criminal charge." *Id.* at 62-63.

[7]In G. L. 1956 (1969 Reenactment) §12-19-18 the Legislature provided that a person confined for violating a deferred sentence agreement by reason of an alleged commission of a felony shall be freed if a grand jury subsequently fails to return an indictment on the specific charge for which he was violated.

*coram nobis* proceedings, we deny and dismiss each defendant's appeal and remit each case to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *John P. Toscano, Jr.,* Asst. Public Defender, for defendants.