STATE

v.

Joanne Rossi CASIANO.

No. 94–23–C.A.

Supreme Court of Rhode Island.

Nov. 21, 1995.

Aaron Weisman, Asst. Attorney General, for Plaintiff.

Paula Lynch Hardiman, Paula Rosin, Asst. Public Defenders, for Defendant.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of the defendant, Joanne Rossi Casiano, from an adjudication in the Superior Court that she had violated the conditions of a previously suspended sentence. On appeal, the defendant challenged the adjudication of violation on the grounds that the trial justice erred both in admitting the hearsay statements of her son, Gian Carlo Casiano, and in refusing to allow her to call the child as a witness in her own defense. For the reasons

stated below, we deny the appeal and affirm the adjudication of violation. The facts insofar as pertinent to this appeal follow.

### Facts and Procedural History

On March 8, 1984, defendant pleaded guilty to the manslaughter of her four-year-old son. She was sentenced to the Adult Correctional Institutions (ACI) for a term of twelve years, five years to serve, the remaining seven years suspended, with probation for seven years to commence upon her release. After her release from the ACI, defendant married Fernando Casiano with whom she had three children: Gian Carlo, born June 6, 1988; Gabrielle, born June 18, 1991; and Enrico, born April 14, 1993.

On April 22, 1993, eight days after the birth of Enrico, Cristina Grant (Grant), a pediatric nurse practitioner, visited defendant's home for the purpose of providing routine mother-and-newborn services. During her one-and-a-half-hour visit, Grant observed more than once that defendant threatened to kill Gian Carlo. As a result of her observations, Grant became concerned for the physical safety of Gian Carlo. Therefore, on the following day, Grant phoned the Department of Children, Youth and Families (DCYF) to request that someone from that department go to defendant's home to investigate the situation. On May 17, 1993, after learning that no one from DCYF had yet visited defendant's home, Grant phoned the Child Advocate Office.

On May 18, 1993, Steven Theriault (Theriault), a DCYF child investigator, went to defendant's home and informed her that he was there as a result of Grant's report that defendant had threatened to kill Gian Carlo. According to Theriault, defendant responded that she was "just kidding" when she threatened to kill Gian Carlo. Theriault then advised defendant that on the basis of Grant's allegations, the three children would have to be examined at Rhode Island Hospital.

At Rhode Island Hospital, Lucy Brown, M.D. (Brown), examined each of defendant's three children in order to rule out child abuse. When she examined Gian Carlo, Brown observed that the child was "covered in bruises," many of which were, in Brown's medical opinion, intentionally inflicted. Brown testified that when she asked Gian Carlo about the bruises, he responded that his sister, three years younger than he, had pushed him down. Because Gabrielle was only twenty-three months old and "kind of a small, little child," Brown "was convinced that she [Gabrielle] couldn't have caused such an injury by pushing him [Gian Carlo] down." Brown then left Gian Carlo in the examination room with Theriault and went to consult with her supervisor, Leigh Jackson, M.D. (Jackson).

Alone with Gian Carlo, Theriault asked the child how he got his bruises. Theriault testified that Gian Carlo answered that his little sister had pushed him down. After asking whether Gian Carlo knew the difference between telling the truth and telling a lie, Theriault testified that Gian Carlo responded, "When we tell the truth it's something that really happened," but a lie is "a story that isn't true." Theriault then asked Gian Carlo to tell him the truth about his bruises. Theriault testified that at that point Gian Carlo answered that his mother had hit him several times with a belt, that his father also had hit him with a belt, and that his mother had caused most of the bruises. When she returned to the examination room, Brown first spoke to Theriault, then again asked Gian Carlo about his bruises. Brown testified that the child had responded that both his mother and his father had hit him with a belt. The attending physician, Jackson, examined Gian Carlo and also observed multiple bruises on the child's body. She was of the opinion that many of the bruises were inflicted, not accidental, and that many of Gian Carlo's "injuries were consistent with being hit with a belt-like object."

During her examination Jackson asked Gian Carlo how he had acquired the bruises. Jackson testified that Gian Carlo answered that he had been hit with a belt by his mother and father. On the basis of the results of the physical examination of Gian Carlo, Brown requested that a "seventy-two hour DCYF hold" be placed on the Casiano children. Such a hold placed the children in the temporary protective custody of DCYF while DCYF determined whether they should

be returned home or placed in a foster home. Theriault and Jackson took defendant into a private office to explain the seventy-two hour hold to her. In the office, Theriault asked defendant how Gian Carlo might have obtained the bruises. According to Theriault, defendant admitted that she had hit Gian Carlo with a belt. Thereafter, Gian Carlo was placed in foster care.

On May 24, 1993, defendant was charged with violating her probation on the grounds of child abuse and/or neglect. At the violation hearing in the Superior Court, held on June 7, 9, and 11, 1993, Grant testified in respect to observations she made at defendant's home; Vicki Moss, Ph.D. (Moss), testified to the "psychological unavailability" of Gian Carlo as a witness; and Theriault testified to defendant's admission that she had hit Gian Carlo with a belt. The court also heard expert medical testimony from Brown and Jackson regarding the nature and the cause of Gian Carlo's injuries.

Over defendant's objection, the court permitted Moss, Brown, Jackson, Theriault, and Detective Niko Katsetos (Katsetos) of the Providence Police Department to testify regarding statements made by Gian Carlo. Moss testified that Gian Carlo told her that his mother had hit him with a belt and held his hands over a stove; Brown testified that Gian Carlo also told her that defendant had hit him with a belt; Jackson testified that Gian Carlo related to her that he was hit with a belt by both his mother and father; Theriault testified that Gian Carlo told him that both his mother and his father had hit him with a belt; and Katsetos testified that Gian Carlo told him that his mother had hit him with a belt and with a plastic coat hanger.

During the hearing, defendant sought to call Gian Carlo as a witness, but the motion of DCYF to quash the witness subpoena for Gian Carlo was granted by the court, and Gian Carlo never testified.

On June 11, 1993, the hearing justice found that defendant had violated her probation by participating in or failing to act reasonably to prevent the physical abuse of Gian Carlo. The court executed defendant's suspended sentence and ordered that defendant serve the remaining seven years at the ACI. A notice of appeal was filed on June 23, 1993, pursuant to G.L.1956 (1985 Reenactment) § 9–24–32, and on June 29, 1994, after a prebriefing conference before a single justice of this Court, the case was ordered to the regular calendar for full briefing and argument.

**Standard of Review**

■ Upon review of an adjudication that a defendant has violated the conditions of a previously suspended sentence, this court limits its consideration to "whether the trial justice acted arbitrarily or capriciously in finding a violation." *State v. Tatro,* 659 A.2d 106, 114 (R.I.1995); *State v. Olsen,* 610 A.2d 1099, 1103 (R.I.1992); *State v. Bourdeau,* 448 A.2d 1247, 1249 (R.I.1982). In the instant case, we consider whether the hearing justice acted arbitrarily or capriciously in finding that defendant had violated G.L.1956 (1994 Reenactment) § 11–9–5.3(b) by, in the justice's words, "participat[ing] or fail[ing] to act reasonably to prevent the child Gian Carlo from being beaten."

**The Nonhearsay Evidence**

■ It is well established that the state need not prove a violation of probation beyond a reasonable doubt; rather, the violation need only be established by reasonably satisfactory evidence. *Olsen,* 610 A.2d at 1103; *Bourdeau,* 448 A.2d at 1249. The sole purpose of a probation-revocation hearing is to determine whether a condition of the probation agreement has been breached. *Bourdeau,* 448 A.2d at 1248.

The issue before the hearing justice was whether defendant had violated her probation by abusing and/or neglecting her son. Under § 11–9–5.3(b),

"Whenever any person abuses a child * * * inflicting upon the child a physical injury not resulting in permanent disfigurement or disability *he or she shall be guilty of child abuse in the second degree.* Whenever any parent or other person with whom a child * * * has been placed by his or her parent, caretaker or licensed or governmental child placement agency for care or treatment allows to be inflicted

upon the child a physical injury not resulting in permanent disfigurement or disability, *he or she shall be guilty of child abuse in the second degree.*" (Emphases added.) The provisions of the statute apply clearly in this case.

■ We consider initially whether the nonhearsay evidence presented at the hearing was sufficient to sustain the state's burden of proving the violation. This court has affirmed an adjudication of violation of probation when "it was abundantly clear that the nonhearsay evidence presented at the adjudication hearing was clearly sufficient to 'establish the violation by reasonably satisfactory evidence.'" *Tatro,* 659 A.2d at 113 (quoting *Olsen,* 610 A.2d at 1103). We are of the opinion that in the instant case, even without Gian Carlo's hearsay statements, the nonhearsay testimony provided more than reasonably satisfactory evidence that defendant had abused and/or neglected Gian Carlo, and thus said evidence was sufficient to sustain the state's burden of proving the violation.

First, the physical evidence, described in the testimony of two examining physicians, established to a reasonable degree of medical certainty that Gian Carlo had multiple intentionally inflicted injuries over his body—injuries that from their location and configuration could not have occurred by accident or by a "push" from his "small, little" two-year-old sister. At the hearing, Brown testified that "When I said he was covered with bruises * * * when he took all his clothes off, and I looked at him and I was horrified." Brown said that Gian Carlo "had bruises on his back, on his arms, on his legs and his buttocks, and back of his thighs." Finally, Brown testified to a reasonable degree of medical certainty that "these bruises were intentionally inflicted and not accidental."

In a similar vein, Jackson testified that "Typical accidental bruises do not have these particular shapes. The location on the body that we found these bruises was very atypical for an accidental injury." According to Jackson, Gian Carlo had "multiple bruises in different stages of healing. He had bruises that were linear in nature." Jackson concluded that the bruises "were consistent with being hit with a belt-like object." This Court

notes that the bruising was clearly evident in the photographs presented in the record of the case. Jackson also concluded that Gian Carlo "had multiple injuries that had been inflicted as opposed to have [*sic*] been accidental." Moreover, we have noted that evidence of injuries occurring over a period of time and evidence of soft-tissue injury (here the skin) are elements that serve as criteria for the "battered child syndrome." *State v. Durand,* 465 A.2d 762, 767 (R.I.1983). The testimony of the examining physicians in this case clearly supported a finding that the bruises on Gian Carlo were neither self-inflicted nor accidental. The defendant shared custody of Gian Carlo with her husband, Gian Carlo's father. Thus, it may be inferred that either defendant or her husband had inflicted the injuries on the child, and hence there was no error in concluding that defendant either inflicted the injuries herself or allowed her husband to inflict the injuries, thereby violating § 11–9–5.3(b). *Id.* at 768.

Second, defendant in fact *stated* that she had struck Gian Carlo with a belt, and she acknowledged that her husband had also hit the child with a belt. When Theriault asked defendant to "just tell me the truth about what happened," defendant responded, "Well, maybe I hit him a few times, maybe I hit him with a belt, * * * I think my husband hit him, too."

In finding that defendant had violated her suspended sentence, the hearing justice relied on the "compelling, uncontroverted testimony" of Brown and Jackson and photographs of Gian Carlo's injuries, which the court found to be "persuasive and supportive of the testimony of the physicians." Relying heavily on this nonhearsay evidence, the hearing justice reasonably found that defendant had "participated in or failed to act reasonably to prevent the child Gian Carlo from being beaten."

The instant case is clearly analogous to *Tatro* insofar as issues that were "central to the determination of the commission of the violation" were clearly resolvable by evidence other than hearsay evidence. *Tatro,* 659 A.2d at 114. In *Tatro,* this court reviewed an adjudication that the defendant had violated the conditions of a previously suspended

sentence. *Id.* at 108. The primary issue on certiorari was whether " 'hearsay' evidence was impermissibly allowed at [the] violation hearing through the testimony of two of the state's three witnesses." *Id.* at 109. We held in *Tatro* that (1) one witness's testimony was not hearsay because it was not offered as substantive proof of the violation, and (2) a second witness's *nonhearsay* testimony "alone would have sufficed for a finding of violation." *Id.* at 113.

In the instant case, it is "abundantly clear that the nonhearsay evidence presented at the adjudication hearing was clearly sufficient 'to establish the violation by reasonably satisfactory evidence.' " *Id.* The photographs of the injuries on Gian Carlo's body, the testimony of the two physicians who described these injuries, and the admissions made by defendant were clearly sufficient to sustain the state's burden of proving the violation by reasonably satisfactory evidence. Consequently, we conclude that the hearing justice did not act arbitrarily or capriciously in finding that defendant had violated her probation. In addition, we have previously noted that the admission of hearsay testimony at an adjudication hearing does not require *ipso facto* the reversal of a finding of violation. *Id.* at 113. The nonhearsay testimony in this case was more than sufficient to sustain the state's burden of proof. Therefore, the admission of hearsay testimony at defendant's hearing does not mandate reversal of the finding of a violation of probation.

**The Admission of Hearsay Statements of Gian Carlo**

█ We next consider defendant's argument that, at her probation-revocation hearing, the admission of Gian Carlo's hearsay statements, in lieu of the child's direct testimony, violated the confrontation clause of the United States and Rhode Island Constitutions. Both Constitutions guarantee to an accused in a criminal prosecution the right to confront the witnesses against him or her. U.S. Const. Amend. VI; R.I. Const. art. I, § 10. It is well-settled, however, that a hearing on whether a defendant has violated probation "is not part of a criminal prosecution, and, thus, does not call for the full panoply of rights due a defendant in such a

criminal proceeding." *Bourdeau,* 448 A.2d at 1248 (citing *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). But because a hearing on the revocation of probation may result in a loss of liberty, such a hearing must provide certain constitutional safeguards. *Gagnon v. Scarpelli,* 411 U.S. 778, 781, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656, 661 (1973); *Morrissey,* 408 U.S. at 482, 92 S.Ct. at 2601, 33 L.Ed.2d at 495; *Bourdeau,* 448 A.2d at 1248; *State v. Bettencourt,* 112 R.I. 706, 710, 315 A.2d 53, 55 (1974). "The minimum due process requirements of a violation hearing call for notice of the hearing, notice of the claimed violation, the opportunity to be heard and present evidence in defendant's behalf, and the right to confront and cross-examine the witnesses against defendant." *Bourdeau,* 448 A.2d at 1249 (citing *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499).

█ A probation-revocation hearing is an informal proceeding, and strict application of the rules of evidence is not required. *Bourdeau,* 448 A.2d at 1249; *Bettencourt,* 112 R.I. at 710, 315 A.2d at 55. Consequently the use of hearsay is not altogether precluded. Before hearsay is admitted, however, particularly on issues that are central to determining whether the violation has been committed, the trial justice must decide whether there is good cause for denying confrontation and/or cross-examination. *State v. DeRoche,* 120 R.I. 523, 533, 389 A.2d 1229, 1234 (1978). Hence, the opportunity to confront and cross-examine adverse witnesses at a violation hearing is a conditional right and need not be afforded to the defendant in those cases in which the hearing officer has found good cause for not allowing confrontation. *Gagnon,* 411 U.S. at 786, 93 S.Ct. at 1761–62, 36 L.Ed.2d at 664; *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499; *Bourdeau,* 448 A.2d at 1249.

█ The question before us, then, is whether there was good cause to deny defendant the opportunity to confront Gian Carlo. The determination of good cause has generally rested on the reliability of proffered substitute evidence and the state's explanation of why confrontation was undesirable or impractical. *United States v. Reynolds,* 49

F.3d 423, 426 (8th Cir.1995); *United States v. Martin,* 984 F.2d 308, 312 (9th Cir.1993); *United States v. Bell,* 785 F.2d 640, 643 (8th Cir.1986); *Bailey v. State,* 327 Md. 689, 705, 612 A.2d 288, 296 (1992). In *State v. Greene,* 660 A.2d 261, 262 (R.I.1995), this Court addressed whether there was good cause for denying confrontation and cross-examination at a probation-violation hearing after we considered the adequacy of the state's reason for not presenting the live-witness testimony and after considering the indicia of reliability of the proffered hearsay.

## 1. The Reliability of the Hearsay Evidence

■■■■ Because "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant," *Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666, 678 (1990), we first consider whether the hearsay evidence presented at defendant's hearing was sufficiently reliable. Courts have often relied on the presence of corroborative evidence in finding that hearsay testimony was sufficiently reliable to be admitted at a probation-revocation hearing. *See, e.g., State v. Labbe,* 617 A.2d 1023, 1025 (Me.1992) (concluding that hearsay was sufficiently reliable where hearsay evidence was corroborated by admissible evidence, including defendant's own admission to his probation officer); *Bailey,* 327 Md. at 704, 612 A.2d at 295 (concluding that good cause was satisfied where hearsay letter was corroborated by defendant's own admissions to his probation officer); *Commonwealth v. Durling,* 407 Mass. 108, 121, 551 N.E.2d 1193, 1200–01 (1990) (holding that detail and similarity in two hearsay police reports made such hearsay sufficiently reliable at revocation hearing); *State v. Finch,* 153 Vt. 216, 218, 569 A.2d 494, 495 (1989) (holding that good cause was established where evidence from two hearsay sources was mutually supportive).

In *Greene,* this court found that a witness's "written statement * * * had virtually no indicia of reliability" when "[i]t was in contradiction of other documentary evidence * * * and her own initial statement." 660 A.2d at 262. The case before us, however, is plainly distinguishable from *Greene,* in that there exist numerous instances of corroborative evidence that make Gian Carlo's hearsay statements that his mother had inflicted his bruises by striking him with a belt more than reasonably reliable. First, defendant herself, through her own statements, corroborated Gian Carlo's statements. Second, two medical experts presented uncontroverted testimony that someone had intentionally inflicted multiple bruises over Gian Carlo's body with a belt-like object. Third, the photographs of Gian Carlo's injuries corroborated the child's statements to Brown, Jackson, Theriault, and Katsetos that he had been hit with a belt on numerous occasions over a period of time. Finally, Gian Carlo related essentially the same story—that his mother had inflicted the bruises by hitting him with a belt—to four different individuals at five different times. Therefore, we conclude that the hearing justice did not err in finding that the hearsay testimony presented at defendant's hearing was sufficiently reliable to establish good cause for denying confrontation.

Because we have concluded that the hearsay testimony was sufficiently reliable to be admitted at defendant's probation-revocation hearing, we need not address defendant's argument that Gian Carlo's statements do not fall within any hearsay exception.

## 2. The Adequacy of the State's Reason for Denying Confrontation

■■■ *Maryland v. Craig,* 497 U.S. at 850, 110 S.Ct. at 3166, 111 L.Ed.2d at 682, affirmed that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." The Supreme Court concluded that "a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Id.* at 853, 110 S.Ct. at 3167, 111 L.Ed.2d at 683.

■■■ The hearing justice found that Gian Carlo was psychologically unavailable to tes-

tify on the basis of the expert testimony of a psychologist who asserted that it would be extraordinarily detrimental to Gian Carlo to testify in court against his mother. It is the conclusion of this Court that the state's interest in protecting Gian Carlo from the psychological trauma of testifying against his mother at the hearing constituted an adequate reason for denying the right to confrontation. Therefore, we hold that the trial justice did not abuse his discretion in finding that Gian Carlo was unavailable to testify.

### 3. The Competence of Gian Carlo to Testify

We next consider defendant's argument that the hearsay statements made by Gian Carlo were inadmissible because there was no evidence that he was competent to testify. We disagree. First, defendant's reliance on *State v. Paster,* 524 A.2d 587 (R.I.1987), is misplaced. In *Paster* this Court held that the statements of a child witness were unreliable and inadmissible under an exception to the hearsay rule because the trial justice had ruled that the child was incompetent to testify. *Id.* at 590–91. In the instant case, however, Gian Carlo was not ruled incompetent to testify. In fact, Theriault testified that Gian Carlo was capable of distinguishing between "the truth" and "a lie." According to Theriault, Gian Carlo told him, "When we tell the truth it's something that really happened" but a lie is "a story that isn't true." Moreover, as discussed *ante,* the court heard substantial corroborative evidence that Gian Carlo's statements were indeed reliable. Thus, we cannot conclude that Gian Carlo was incapable "of relating a capacity to observe, to recollect, to communicate, or to appreciate truthfulness." *Id.* at 590.

### The Right to Compulsory Process

■■■■ Last, we consider defendant's argument that the hearing justice's refusal to permit her to call Gian Carlo as a witness in her defense violated her constitutional right to compulsory process. The compulsory process clause of the Sixth Amendment to the United States Constitution guarantees the right of a criminal defendant to offer the testimony of witnesses on her or his behalf and to compel the testimony of such witnesses if necessary. Article I, section 10, of the Rhode Island Constitution also guarantees the right of criminal defendants "to have compulsory process for obtaining [witnesses] in their favor." Moreover, an accused retains the right to present witnesses at a probation-violation hearing. *Gagnon,* 411 U.S. at 781–82, 93 S.Ct. at 1759, 36 L.Ed.2d at 661–62.

In circumstances similar to those in this case, courts have combined a defendant's compulsory process clause claim with his or her confrontation clause claim. *See, e.g., United States v. Martin,* 984 F.2d at 310 n. 3 (subjecting a compulsory process claim to the same analysis as a right to confrontation claim because the court found that the primary purpose of a "requested retest" was to impeach directly certain hearsay testimony); *State v. Orelup,* 520 N.W.2d 898, 901 n. 3 (S.D.1994) (combining the two issues because the court found that a probation violator's assertion that the trial court's failure to issue a subpoena violated his due process right to compulsory process was simply a restatement of his confrontation clause claim). Consequently, it is the conclusion of this Court that defendant's claim that she was denied compulsory process is actually a restatement of her earlier claim that she was denied her right to confront Gian Carlo at her violation hearing. Therefore, we subject defendant's compulsory process claim to the same analysis as her claim that she was denied the right of confrontation.

■■■■ We held *ante* that the hearing justice had not abused his discretion in finding that Gian Carlo was psychologically unavailable to testify *against* defendant. It is apparent to us that the detrimental effects of forcing Gian Carlo to testify *for* defendant and then face cross-examination would equal those of testifying on behalf of the state. Thus, compelling Gian Carlo to testify as a witness for defendant would effectively negate the trial justice's previous ruling of unavailability.

We point out that defendant was not prejudiced by the exclusion of evidence from Gian Carlo because there was but one question to be settled at the hearing—whether defendant had violated her probation by inflicting the

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

bruises on Gian Carlo's body. The only proffered evidence that was relevant to answering that question supported the conclusion that defendant had struck Gian Carlo. Such evidence would have assisted the state, not defendant. Thus, the hearing justice did not err in refusing to allow defendant to call Gian Carlo as a witness.

**Conclusion**

In summary, we conclude that the evidence presented at the defendant's hearing was more than reasonably satisfactory to prove that she had violated her probation. The testimony presented—most significantly the defendant's own statements that she had inflicted at least some of the injuries by hitting Gian Carlo with a belt—was more than sufficient to satisfy the state's burden of proof. Therefore, we hold that the hearing justice did not act arbitrarily or capriciously in finding that the defendant had violated the conditions of her previously suspended sentence. Consequently, we deny and dismiss this appeal and affirm the adjudication of the Superior Court, to which we return the papers in the case.